575 So.2d 611 (1990)
Jerome Terrence MARKS
v.
STATE.
8 Div. 414.
Court of Criminal Appeals of Alabama.
September 21, 1990.
On Return to Remand January 18, 1991.
Rehearing Denied January 18, 1991.
*613 Don Temple Terrell, Huntsville, for appellant.
Don Siegelman, Atty. Gen., and Yvonne A. Henderson, Asst. Atty. Gen., for appellee.
PATTERSON, Judge.
Appellant, Jerome Terrence Marks, was indicted by a Morgan County Circuit Court for the offense of trafficking cocaine, a violation of § 20-2-80, Code of Alabama 1975. A jury found appellant guilty as charged in the indictment, and appellant received a sentence of eight years in the State penitentiary.
Appellant now appeals his conviction, raising three issues.
Appellant's first issue is that the trial court failed to swear in the members of the petit jury. Our examination of the record on appeal reveals that the court's administration of the oath of the jurors was not included in the record. However, we do find an indication from the transcript that the jury was "selected," but no evidence of that selected jury being sworn. In addition, the court's minute entry and case action summary sheet fail to indicate that the jury was duly sworn.
The administration of the oath to a petit jury is a statutory requirement under § 12-16-170, Code of Alabama 1975. Numerous Alabama cases indicate that a presumption that the jury was sworn cannot be made from a silent record. See e.g., Porter v. State, 520 So.2d 235, 237 (Ala.Cr. App.1987); Wilson v. State, 57 Ala.App. 591, 329 So.2d 649, 649 (1976); Whitehurst v. State, 51 Ala.App. 613, 288 So.2d 152, cert. denied, 292 Ala. 758, 288 So.2d 160 (1973). "There must be some affirmative showing in the record that the oath to the jury was administered." Porter v. State, 520 So.2d at 237 (citing Gardner v. State, 48 Ala. 263 (1872)). An unsworn jury is a non-jury. Wilson v. State, 329 So.2d at 649.
For the above-stated reasons, this cause is returned to the trial court for a determination as to whether the petit jury was properly administered the oath pursuant to § 12-16-170.
We, therefore, refrain from addressing appellant's other issues on appeal until due return of the trial court's findings to this court.
REMANDED WITH DIRECTIONS.
All Judges concur.

ON RETURN TO REMAND
PATTERSON, Judge.
We remanded this case to the trial court for a determination as to whether the petit jury which heard the case was properly administered the oath required by § 12-16-170, Code of Alabama 1975. A return to our remand has been filed showing that the oath was properly administered. Thus, there is no merit in the first issue raised by appellant on appeal. We will now address the remaining issues.

*614 I.
Appellant contends that the trial court committed reversible error in denying his motion to suppress evidence seized as a result of a search conducted pursuant to a warrant. He argues that the warrant was invalid because, he says, it was based upon an affidavit containing "double hearsay." The relevant part of the affidavit states:
"Within the past two hours prior to the signing of this affidavit, your affiant was contacted by James E. Hunter an officer with the Huntsville Police Department. Inv. Hunter advised your affiant that he had been contacted by a confidential and reliable informant concerning the possession of Cocaine Hydrochloride in Decatur, Alabama. Inv. Hunter added that this informant has given information in the past that has led to the arrest and conviction of numerous violators of the Alabama Uniform Controlled Substance Act. Inv. Hunter stated that this informant stated to him that he had been inside the above described residence within twenty-four hours prior to his conversation with Inv. Hunter and observed a quantity of Cocaine Hydrochloride being offered for sale by Jimmy Ranceful while inside the residence. Inv. Hunter also stated that the informant told him that he observed an additional quantity of Cocaine Hydrochloride inside the residence other than that which he observed being offered for sale. Your affiant was also contacted by a confidential informant within the past two weeks concerning the same residence. This informant has provided information in the past which has led to the arrest and conviction of violators of the Alabama drug law. This informant described the residence within the month prior to our conversation and observed Cocaine Hydrochloride being offered for sale from within the residence."
The record shows that Sergeant Frank DeButy (a narcotics investigator in the Decatur police department), Dick Marx (an agent of the Federal Bureau of Investigation), and Officers Mark Roberts and James Hunter of the Decatur police department went to a residence in Morgan County belonging to Emma Byrd. They had received reports that drug transactions were taking place in the residence. Appellant, Susan Tovar, Susan Tovar's brother, and a child were at the residence when the officers arrived. The officers requested permission to search the residence, and were told by the persons present, including appellant, that they did not have authority to consent to a search. Agent Marks and Officer Roberts remained at the residence while Sergeant DeButy and Officer Hunter went to the magistrate to obtain a search warrant. DeButy prepared and executed the affidavit and he and Hunter appeared before the magistrate. The magistrate issued the warrant based upon DeButy's affidavit, a portion of which is quoted above. The officers returned to the residence and executed the warrant, finding and seizing the cocaine and drug paraphernalia in the residence.
Appellant contends that Sergeant DeButy had no personal knowledge for swearing that an informant known to Officer Hunt was reliable. He characterizes the information in the affidavit as "double hearsay." While Officer Hunter was present when the magistrate issued the warrant, the magistrate apparently did not question him.
Section 15-5-3, Code of Alabama 1975, provides: "A search warrant can only be issued on probable cause, supported by an affidavit naming or describing the person and particularly describing the property and the place to be searched."
Probable cause must be determined by an analysis of "the totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). In determining whether to issue a search warrant, the issuing magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of the person supplying the information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Illinois v. *615 Gates; Hyde v. State, 534 So.2d 1132 (Ala. Cr.App.1988). Our duty as a reviewing court is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. Illinois v. Gates; McCray v. State, 501 So.2d 532 (Ala.Cr. App.1986); Hyde v. State. Probable cause may be based on hearsay from a reliable source if there is a disclosed, reliable basis for the information. Illinois v. Gates, 462 U.S. at 245, 103 S.Ct. at 2335; United States v. Hernandez, 825 F.2d 846, 849-50 (5th Cir.1987), cert. denied, 484 U.S. 1068, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988); United States v. Asselin, 775 F.2d 445 (1st Cir.1985); Waldrop v. State, 462 So.2d 1021 (Ala.Cr.App.1984), cert. denied, 472 U.S. 1019, 105 S.Ct. 3483, 87 L.Ed.2d 618 (1985). Information from fellow officers may be relied on. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). However, "To comply with the requirements of particularity and to make an independent probable cause evaluation, ... the agent must state in the affidavit that he is relying upon other officers." United States v. Kirk, 781 F.2d 1498 (11th Cir.1986). Courts have constantly held that another law enforcement officer is a reliable source and that consequently no special showing of reliability need be made as a part of the probable cause determination. W. LaFave, Search and Seizure § 3.5(a) (2d ed. 1987). This is important when the law enforcement officer is a link in the chain of communication, as he is in the instant case. See State v. Alderete, 88 N.M. 14, 536 P.2d 278 (1975) (arrest warrant issued upon affidavit of detective based upon his examination of police reports, and holding that the fact that the affiant detective's information was double hearsay did not keep that information from providing probable cause); United States v. Asselin (rejecting hearsay objection where affiant set out what a police officer was told by his informant); State v. Pontier, 103 Idaho 91, 645 P.2d 325 (1982) (information passed from California narcotics agent to Idaho agent and then to affiant held sufficient to establish probable cause); Commonwealth v. Musi, 486 Pa. 102, 404 A.2d 378 (1979) (rejecting hearsay objection where eyewitness gave his information to one police officer and that officer then telephoned the information to another officer who acted as affiant to obtain the search warrant).
In the instant case, the information came from a reliable informant who had given information in the past which had led to numerous arrests and convictions for violations of the controlled substances act. He reported to Officer Hunter that within the last 24 hours he had observed cocaine being offered for sale in the residence by Jimmy Ranceful and had also observed an additional quantity of cocaine in the residence other than that being offered for sale. Officer Hunter communicated this information to the affiant, Sergeant DeButy, within two hours. DeButy executed the affidavit based on the information furnished by Hunter, and he obtained the search warrant. The affidavit recites that the information was obtained from Officer Hunter. Officer Hunter, who supplied the information for the affidavit, possessed the requisite information to satisfy the probable cause requirements. The fact that his fellow officer, DeButy, received the information, prepared the affidavit, and obtained the warrant is of no consequence, where the affidavit accurately reflects the information possessed by Hunter and that information satisfies the probable cause requirement.
We hold that the affidavit established sufficient probable cause to support the issuance of the search warrant. The denial of the motion to suppress was proper.

II.
The appellant contends that the trial court committed reversible error when it denied his motion for a new trial based on newly discovered evidence. The evidence which he claims in his motion is newly discovered is the "now available" testimony of his codefendant, Jimmy Ranceful, who was also convicted after pleading guilty to trafficking in cocaine. In an affidavit attached to the motion for a new trial, and in testimony at the hearing on the motion, Ranceful claims that appellant had no *616 knowledge of the cocaine seized in the residence and was not involved in the drug operation. He states that he and a person named Greg Cowlin, now deceased, were the parties engaged in selling cocaine. He claims that he was prevented from testifying at appellant's trial because his own case was pending, and that had he been called to testify he would have refused to testify for appellant on Fifth Amendment grounds on the advice of his counsel. He states that he is now available to testify and exculpate appellant should a new trial be granted.
To establish a right to a new trial based on newly discovered evidence, the movant must show the following: (1) that the evidence will probably change the result if a new trial is granted; (2) that the evidence has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; and (5) that it is not merely cumulative or impeaching. Ex parte Heaton, 542 So.2d 931 (Ala.1989). "While all five requirements ordinarily must be met, the law has recognized that in certain exceptional circumstances, even if the newly discovered evidence is cumulative or impeaching, if it appears probable from looking at the entire case that the new evidence would change the result, then a new trial should be granted." Ex parte Heaton, 542 So.2d at 933.
"`The appellate courts look with disfavor on motions for new trials based on newly discovered evidence and the decision of the trial court will not be disturbed absent abuse of discretion.' Further, `this court will indulge every presumption in favor of the correctness' of the trial judge's decision. The trial court is in the best position to determine the credibility of the new evidence."
Ex parte Heaton, 542 So.2d at 933 (quoting from Isom v. State, 497 So.2d 208, 212 (Ala.Cr.App.1986)).
Although a new trial may be granted on grounds of newly discovered evidence which tends to prove that the crime for which the accused has been convicted was actually committed by another, whether to award a new trial rests in the sound discretion of the trial court and depends largely on the credibility of the new evidence. Robinson v. State, 389 So.2d 144 (Ala.Cr.App.), cert. denied, 389 So.2d 151 (Ala.1980); Pennington v. State, 420 So.2d 845 (Ala.Cr.App.1982).
The record in the instant case shows that at the time of the search of the residence and the seizure of the cocaine, appellant had been staying in the residence for about three weeks. Jimmy Ranceful was living at the residence, and Greg Cowlin had occasionally stayed there. Appellant, Ranceful, and Cowlin were cousins. The residence belonged to their grandmother, who lived in California. The record shows that at the time of the trial, Cowlin was deceased, having been killed in California. The cocaine which formed the basis for the charges against appellant and Ranceful was discovered in a briefcase under a bed in the residence. Appellant was present at the residence when the officers arrived to conduct the search. Identification documents belonging to appellant were found on the bedside table in the bedroom near where the briefcase containing the cocaine was found. The briefcase was locked and the keys were found in another bedroom. The briefcase contained, inter alia, four Western Union transfer applications, a box of matches, emery boards, scissors, a sifting device, measuring spoons, a set of "street scales," a pair of tweezers, a small plastic bag containing $25.00, a small plastic bag containing two tinfoil packs containing cocaine, a small plastic bag containing fifty $1.00 bills, a piece of brown paper, and a large piece of solid cocaine. Appellant's fingerprints were found on both plastic bags containing money, on the plastic bag containing cocaine, on the match box, and on the piece of brown paper. The total amount of cocaine was 49.4 grams. Shortly after his arrest, appellant gave a statement denying knowledge of the cocaine and claiming that the briefcase and its contents belonged to Ranceful. He stated that on several occasions Ranceful had asked him to count sums of money, and to package it in plastic bags. At Ranceful's request, he *617 said, he had on several occasions wired money through Western Union to persons in California. On one occasion he wired $1,000. He stated that he "figured" the money came from "drug deals." He further stated that his fingerprints might be found on packages of money and on receipts in the briefcase. He testified at trial, denying any involvement in, or knowledge of, the cocaine or drug operations. In an effort to explain his fingerprints on items in the briefcase, he testified that on one occasion he was in a motel with Ranceful and that when Ranceful left the room he looked in the briefcase, out of curiosity, and upon discovering money and plastic bags put the money in the plastic bags. Appellant was unemployed during the time he resided in the residence, and during this time there was unusual activity of persons going and coming.
There were inconsistencies between appellant's statement and his testimony at trial. There were inconsistencies between appellant's trial testimony and Ranceful's affidavit and testimony at the hearing on the motion for a new trial. For instance, Ranceful insisted that there was no cocaine in the briefcase when he and appellant were at the motel. Still, appellant's fingerprints were found on the plastic bag containing cocaine in the briefcase. If Ranceful's testimony is taken as true, it is reasonable to conclude that appellant must have handled the cocaine found in the briefcase at another time. Appellant was not a very convincing witness, nor was his co-defendant Ranceful. In fact, their stories are hardly worthy of belief. The evidence against Ranceful was such that he had no apparent course open to him other than to admit his own guilt. His effort to absolve appellant would cost him nothing. We note from the many reported cases that it is not unusual under such circumstances as exist here that one of two convicted accomplices will seek to assume the entire guilt and thus exculpate his codefendant. Needles to say, such testimony should be carefully scrutinized. After weighing all the facts and circumstances of the case, we are of the opinion that it is highly unlikely that the testimony now offered by Ranceful would change the result if a new trial were granted. Since the jury in the instant case did not believe appellant, when he denied any knowledge of the drug operations, it is improbable in our opinion that the jury would have reached a different conclusion had it had the testimony of Ranceful.
Appellant relies on Newsom v. United States, 311 F.2d 74 (5th Cir.1962), for the proposition that a previously silent codefendant's post-conviction willingness to testify constitutes newly discovered evidence warranting a new trial. A similar case, not cited by appellant, is Ledet v. United States, 297 F.2d 737 (5th Cir.1962). In another similar case, the Fifth Circuit Court of Appeals has had occasion to reconsider and explain its holding in these two cases. See United States v. Metz, 652 F.2d 478 (5th Cir.1981). In Metz, referring to Newsom and Ledet, the Court stated, "A closer analysis of the facts and legal reasoning of these decisions does not warrant the adoption of such a blanket proposition." The court went on to distinguish Metz from Newsom and Ledet. It found that the court did not abuse its discretion in denying Metz's motion for a new trial. It found that the evidence supporting the convictions of Newsom and Ledet was ambiguous and extremely weak, while the opposite was true in Metz. We find the case now before us to be factually distinguishable from Newsom and Ledet, and more analogous to Metz. We do not view the evidence against appellant as ambiguous or weak. Albeit circumstantial, it is strong and convincing. It is our view that the holding of Newsom and Ledet does not apply in this instance.
Further, we are not convinced that the evidence has been discovered since the trial. It may be newly available evidence in a sense, but it is certainly not newly discovered. Ranceful testified that after learning the substance of appellant's testimony from his counsel, and after the jury began deliberations in appellant's case, but before the jury returned its verdict, he entered a plea of guilty. It is reasonable to assume from Ranceful's testimony that he had negotiated a plea bargain agreement prior to *618 the conclusion of appellant's trial. It is also reasonable to conclude from the testimony that appellant and his counsel knew prior to his trial that Ranceful was willing to testify favorably for appellant but that Ranceful, on advice of his counsel, decided against testifying because he had not yet entered his guilty plea. While Ranceful's testimony is somewhat conflicting and confusing as to what transpired during the discussions as to whether or not he would testify, we find the following colloquy between the trial court and Ranceful informative:
"THE COURT: And your reason for not testifying in Mr. Marks' case was what?
"THE WITNESS: Well, he said it might damage my case, I mean my testimony to his case might, you know, jeopardize my case. I can't recall the words he used
"THE COURT: You are talking about incriminatingyou might incriminate yourself?
"THE WITNESS: Right. I might incriminate myself.
"THE COURT: Well, at the time that Mr. Marks' case was being tried did you know you were going to plead guilty?
"THE WITNESS: Yes, I did.
"THE COURT: So it wouldn't have mattered, would it?
"THE WITNESS: Well, I was waiting."
Under the circumstances here, Ranceful was not unavailable to be called as a defense witness during the trial. Having negotiated a plea agreement and having decided to plead guilty, before appellant's trial, his testimony would have cost him nothing and he could have been compelled to testify. Appellant's counsel chose not to call Ranceful because he had been informed prior to trial that Ranceful would refuse to testify on grounds of self-incrimination. This decision not to call Ranceful when he was in fact accessible as a defense witness, in our view, defeats any subsequent attempt to establish that Ranceful's testimony was newly discovered evidence. Since the appellant did not pursue the matter as a part of a sustained effort to compel the codefendant's testimony, the appellant never discharged his responsibility to act diligently in procuring the evidence on which he now seeks to base his motion for a new trial. See United States v. Rocco, 587 F.2d 144 (3d Cir.1978), cert. denied, La Duca v. United States, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979). The codefendant's exculpatory testimony was actually known to appellant at the time of his trial and, thus, could not be considered to be newly discovered evidence.
Finally, Ranceful's testimony appears merely to be cumulative of that of appellant denying participation in the illegal drug activity.
In conclusion, we find that the trial court did not abuse its discretion in denying the motion for a new trial since appellant failed to establish that the expected testimony of his codefendant, Ranceful, would probably change the result if a new trial were granted, that the testimony constituted newly discovered evidence, that it could not have been discovered before the trial by the exercise of due diligence, and that it was not merely cumulative.

III.
Appellant claims that the trial judge erred in denying his motion for a judgment of acquittal because, he contends, the state failed to prove that he was in constructive possession of the cocaine. In order to convict this appellant of trafficking, the state was required to prove that he was knowingly in actual or constructive possession of 28 grams or more of cocaine. Appellant was not shown to be in actual possession of the cocaine discovered on the premises. Thus, we must determine whether the prosecution presented evidence that appellant was in constructive possession of the cocaine.
"Possession, whether actual or constructive, has the following three attributes: (1) Actual or potential physical control, (2) intention to exercise dominion and (3) external manifestations of intent and control." Korreckt v. State, 507 So.2d 558, 564 (Ala.Cr.App.1986). When, as in this case, constructive possession is relied on, the state must adduce some facts from which the jury could find beyond a reasonable *619 doubt that the accused had knowledge of the presence of the controlled substance. Ex parte Story, 435 So.2d 1365 (Ala. 1983). Such knowledge usually is established by circumstantial evidence. Walker v. State, 356 So.2d 674 (Ala.Cr.App.1977), cert. denied, 356 So.2d 677 (Ala.1978).
When an accused has exclusive possession of the premises where contraband is discovered, a logical inference arises that the accused had knowledge of the presence of the contraband; however, when an accused is in possession, but not exclusive possession of the premises, it may not be inferred that he knew of the presence of any controlled substance found there unless there are other circumstances tending to buttress this inference; what is required is some evidence that connects the defendant with the contraband that is found. Korreckt v. State.
"When the presence of the accused at the scene is established and evidence of his knowledge of the presence of the illegal substance is showneven by circumstantial evidencealong with any other incriminating evidence, the issue of appellant's guilt should be submitted to the jury." Moore v. State, 457 So.2d 981, 986 (Ala.Cr. App.1984), cert. denied, 470 U.S. 1053, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985).
In the instant case, a jury could draw a rational inference that appellant had knowledge of the presence of cocaine located in the briefcase, which was found under a bed in one of the bedrooms of the residence. He resided at the residence and was present at the time of the search and seizure. Appellant's identification papers were on the bedside table in close proximity to the briefcase, but, more significant, his fingerprints were on a plastic bag containing cocaine and on plastic bags of money in the briefcase. Furthermore, he admitted wiring large sums of money to California, which he "suspected" were the proceeds from drug transactions. This evidence was sufficient to authorize the submission of the issue to the jury. The trial court's denial of appellant's motion for a judgment of acquittal was proper.
For the above reasons, this case is due to be affirmed.
The application for rehearing filed by the state on October 5, 1990, is overruled. The Rule 39(k) motion is denied.
OPINION EXTENDED; AFFIRMED. APPLICATION FOR REHEARING OVERRULED; RULE 39(k) MOTION DENIED.
All Judges concur.