The appellant, Tommy Lee Rutledge, who was 18 years old at the time of the offenses, was indicted on two counts of murder. The murder was made capital because two or more persons were killed pursuant to one course of conduct, see §13A-5-40(a)(10), Code of Alabama 1975, and also because the murders occurred during a robbery in the first degree, see §13A-5-40(a)(2), Code of Alabama 1975. The jury convicted Rutledge of capital murder on the charge brought pursuant to §13A-5-40(a)(10), but convicted him of the lesser included offense of robbery in the first degree on the charge brought pursuant to § 13A-5-40(a)(2), see § 13A-8-41, Code of Alabama 1975. He was sentenced to life imprisonment without parole for the capital murder conviction and to life imprisonment for the robbery conviction.
The state's evidence tended to show that on December 22, 1993, Rutledge, the victims — Kevin Edwards and Radshaw Whitman — and Edwards's cousin Gerald Campbell were at Edwards's grandmother's house. Rutledge testified that they had been there about a day and a half and that they had been smoking marijuana.
Campbell testified that on December 22, 1993, Edwards and Whitman were sleeping on couches, and that he was sleeping on the floor when he was suddenly awakened around 5:00 o'clock a.m. by the sound of two gunshots. He testified he saw Rutledge standing over Edwards and Whitman with a gun in his hand.
Campbell testified that Rutledge put the gun to his head and ordered him to search Edwards's body. Rutledge also forced Campbell to help him drag the bodies into the kitchen, where Rutledge shot them each again in the head and dumped trash over them. Rutledge then told Campbell to take some Christmas presents that were in the house and a stereo to Edwards's car. Campbell *Page 999 
testified that Rutledge then set fire to the trash on the bodies and to the couch.
Rutledge and Campbell left in Edwards's car and went to Rutledge's house, where they took the Christmas presents and the stereo to the attic. Campbell testified that they then walked to a nearby store and purchased a small amount of gasoline. They returned to Rutledge's house, and Rutledge poured gasoline on Edwards's car and set it ablaze.
Rutledge then took Campbell to a small storehouse next to his house, tied him to a chair, and taped his mouth shut. After about two hours, Campbell escaped and telephoned the police.
 I
Rutledge's first contention on appeal is that there was not sufficient evidence presented to sustain a conviction.
 " 'In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.' Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr.App. 1984), affirmed, 471 So.2d 493 (Ala. 1985)."
Allen v. State, 611 So.2d 1188, 1192 (Ala.Cr.App. 1992).
Rutledge contends that there was insufficient evidence to support his conviction for capital murder based on the killing of two or more persons pursuant to one course of conduct and for capital murder because the killings occurred during a robbery in the first degree. The record shows that the appellant was convicted of violating § 13A-5-40(a)(10), Code of Alabama 1975, which makes capital the murder of two or more persons pursuant to one course of conduct. However, on the other charge, the appellant was convicted only of the lesser included offense of robbery in the first degree, see §13A-8-41, Code of Alabama 1975. We address the issue of sufficiency of the evidence only as it concerns those crimes of which the appealing party was convicted.
Rutledge first alleges that Gerald Campbell's story was "unbelievable" and that from the evidence the jury could conclude that Campbell had actually shot one of the two victims. Campbell testified at trial that he saw Rutledge shoot both Kevin Edwards and Radshaw Whitman. As this court stated inMcLeod v. State, 627 So.2d 1066, 1068 (Ala.Cr.App. 1993), quoting Johnson v. State, 555 So.2d 818, 820 (Ala.Cr.App. 1989), " '[t]he credibility of witnesses and the weight to be given the testimony is for the jury to determine.' "
This court will not substitute its judgment for that of the jury. Gossett v. State, 451 So.2d 437 (Ala.Cr.App. 1984). There was a "gracious plenty" of evidence from which the jury could convict Rutledge of capital murder and of robbery in the first degree.
 II
Rutledge next contends that the trial court erred in not permitting him to play a portion of an audio tape that contained Campbell's statement to police during cross-examination. Rutledge states in his brief to this court that he wanted to offer the tape to show that Campbell had made prior inconsistent statements.
Before a witness may be impeached by use of a prior inconsistent statement, the party seeking to impeach must lay a proper predicate.
 "When a witness, on cross-examination, denies that he made a statement out of court which is inconsistent with his testimony on direct examination, the only available move for the impeaching party is to bring on an impeaching witness who can testify as to the prior inconsistent statement of the witness being impeached. Before such extrinsic evidence may be elicited, however, it is the general rule that the impeaching party must lay a proper predicate by asking the party being impeached whether he made such statement, specifying with reasonable certainty the time when, the place where, the person to whom such supposed statement was made and the substance of such statement." *Page 1000 
C. Gamble, McElroy's Alabama Evidence, § 157.01(1) (4th ed. 1991).
The new Alabama Rules of Evidence, effective adopted January 1, 1996, state:
 "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness has been confronted with the circumstances of the statement with sufficient particularity to enable the witness to identify the statement and is afforded an opportunity to admit or deny having made it."
Rule 613(b), Ala.R.Evid.
The record shows that Rutledge's counsel failed to lay a proper predicate and that the trial court was correct in not allowing the tape to be played to the jury.
 III
Rutledge also contends that the trial court erred when it refused to charge the jury on the lesser included offense of manslaughter. "Generally, a trial court should instruct the jury on a lesser offense if there is a reasonable theory from the evidence to support that lesser offense." Parker v. State,587 So.2d 1072, 1084 (Ala.Cr.App. 1991).
 " 'A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) the requested charge would have a tendency to mislead or confuse the jury.' "
Fox v. State, 659 So.2d 210, 212 (Ala.Cr.App. 1994), quotingAnderson v. State, 507 So.2d 580 (Ala.Cr.App. 1987).
Manslaughter, under § 13A-6-3, Code of Alabama 1975, requires that the victim's death be caused recklessly or due to a sudden heat of passion. No evidence was presented that would support a jury charge on the lesser included offense of manslaughter.
Campbell testified that Rutledge was standing over the bodies of the two victims immediately after Campbell heard two gunshots, and that he saw Rutledge shoot them each again in the head after he and Rutledge dragged the victims into the kitchen. Campbell also testified that he and the victims were sleeping immediately before the shooting. No reasonable theory of manslaughter can be supported by these facts and the trial court did not err in refusing to give jury instructions on manslaughter.
 IV
Rutledge additionally contends that the State of Alabama used 9 of its 14 peremptory strikes to remove potential black jurors in violation of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Rutledge alleges that these potential jurors were struck for no other reason than their race.
In Batson, the United States Supreme Court held that black prospective jurors could not be struck from a black defendant's jury based solely on the basis of their race. The United States Supreme Court extended its decision in Batson to apply to white defendants in Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364,113 L.Ed.2d 411 (1991); to civil cases in Edmonson v. LeesvilleConcrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660
(1991); and to defense counsel in criminal cases in Georgia v.McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). The Alabama Supreme Court had held that Batson applies to the striking of white prospective jurors. White ConsolidatedIndustries, Inc. v. American Liberty Insurance Co.,617 So.2d 657 (Ala. 1993). In 1994, the United States Supreme Court extended Batson to apply to gender. J.E.B. v. Alabama,511 U.S. 127, 114 S.Ct. 1419, 128 L.E.2d 89 (1994).
The burden is on the party alleging a Batson violation to first prove a prima facie case of discrimination. Ex parteBird, 594 So.2d 676 (Ala. 1991). Some of the methods for establishing a prima facie case were listed by the Alabama Supreme Court in Ex parte Branch, 526 So.2d 609 (Ala. 1987):
 "1. Evidence that the 'jurors in question share[d] only this one characteristic — their membership in the group — and that in all other respects they [were] as heterogeneous as the community as a whole.' . . .
 "2. A pattern of strikes against black jurors on the particular venire. . . . *Page 1001 
 "3. The past conduct of the [offending] attorney in using peremptory challenges to strike all blacks from the jury venire. . . .
 "4. The type and manner of the [offending] attorney's questions and statements during voir dire, including nothing more than desultory voir dire. . . .
 "5. The type and manner of questions directed to the challenged juror, including a lack of questions, or a lack of meaningful questions. . ..
 "6. Disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or similar manner. . . .
 "7. Disparate examination of members of the venire. . . .
 "8. Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike blacks from the jury. . . .
 "9. The [offending party] used peremptory challenges to dismiss all or most black jurors."
526 So.2d at 622-623.
After ruling on Rutledge's Batson motion, the court made the following remarks.
 "THE COURT: I wanted to go back on the record in regard to the Batson motion yesterday. I did state for the record the numbers that we were dealing with. I didn't specifically give my reasons for my ruling and I think I will go back and do that for purposes of the record, which I normally do.
 "For the record, the Court, of course, was present during the entire voir dire, both general and individual voir dire of the jurors, and observed the response or lack of response by all the jurors; and, of course, their demeanor during voir dire.
 "Also go on the record and say I have tried many cases with Ms. Petro [the prosecutor] over the years and she has not shown any pattern or practice of using strikes in a discriminatory manner or racial manner."
 "And again, for the record, there were 42 jurors from which we struck, 18 of those were black citizens. The State used 9 of their strikes out of 14 to strike blacks. The defendant used all of his strikes to strike whites which, of course, greatly reduced the pool from which the State had to exercise their strikes."
The trial court found that Rutledge did not establish a prima facie case of discrimination. " 'It is within the sound discretion of the trial court to determine if the State's peremptory challenges of black jurors are motivated by intentional racial discrimination.' " Taylor v. State,666 So.2d 36, 43 (Ala.Cr.App. 1994), quoting Ex parte Lynn,543 So.2d 709, 712 (Ala. 1988), cert. denied, 493 U.S. 945,110 S.Ct. 351, 107 L.Ed.2d 338 (1989). The court did not abuse its discretion in denying Rutledge's motion, but rather, in this, our opinion, exercised that discretion in the manner envisioned in Batson and Branch.
 V
Rutledge finally contends that the trial court erred by denying his motion to suppress his statement to police because, he says, it was given in violation of Rule 11, Ala.R.Juv.P.
He specifically contends that there is no evidence in the record to show that he was allowed to talk to his mother before he gave his statement. He attempts to support his allegations through the testimony of Jimmy Warren, school resource officer for the Birmingham Police Department, who testified that he did not actually hear the conversation between Rutledge and his mother. No other witness testified that they heard the conversation between Rutledge and his mother.
Officer Warren testified that Rutledge was read his juvenile rights and signed a juvenile rights form, which informed him of his right to communicate with his parents before being questioned. Warren testified that Rutledge asked to talk to his mother, he was not questioned any further until she arrived. Warren further testified that Rutledge's mother came to the police station and was in the same room with Rutledge and that they were given an opportunity to communicate.
In Flowers v. State, 586 So.2d 978 (Ala.Cr.App.), cert. denied, 596 So.2d 954 (Ala. 1991), cert. denied, 504 U.S. 930,112 S.Ct. 1995, 118 L.Ed.2d 591 (1992), this court *Page 1002 
held that all Rule 11, Ala.R.Juv.P., requires is that the juvenile be informed that he or she has the right to communicate with a parent and that the juvenile be allowed to communicate with that parent if he or she so chooses. Whether Officer Warren actually heard the conversation between Rutledge and his mother or even whether such conversation took place is irrelevant, because the record shows that they were given theopportunity to communicate. Surely, Rutledge does not mean to suggest that there should be an attendant, or an eavesdropper, to these conversations. " 'In reviewing the correctness of the trial court's ruling on a motion to suppress, this Court makes all the reasonable inferences and credibility choices supportive of the decision of the trial court.' " Kennedy v.State, 640 So.2d 22, 26 (Ala.Cr.App. 1993), quoting Bradley v.State, 494 So.2d 750, 761 (Ala.Cr.App. 1985), aff'd,494 So.2d 772 (Ala. 1986), cert. denied, 480 U.S. 923, 107 S.Ct. 1385,94 L.Ed.2d 699 (1987). A trial court's ruling on a motion to suppress will not be disturbed unless it is "palpably contrary to the great weight of the evidence." Parker v. State,587 So.2d 1072, 1088 (Ala.Cr.App. 1991). The trial court's ruling in this case was not contrary to the great weight of the evidence; the court did not err in denying appellant's motion to suppress the statement.
For the foregoing reasons, the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.