[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 611 
The appellant, John Lionel Neal, was convicted of the capital offense of murder committed during the course of a burglary, see § 13A-5-40(a)(4), Ala. Code 1975. The jury, by a vote of 10-2, recommended that the appellant be sentenced to death; the trial court accepted the jury's recommendation and sentenced the appellant to death by electrocution.
On February 16, 1987, Mrs. Wilma Underwood was found dead in the kitchen of her house in Foley. Underwood's house had been ransacked, and her television set and wedding band were missing. Her purse was on the couch, and its contents were strewn on the floor. An autopsy revealed that Underwood had been beaten to death. The cause of death was listed as blunt force to the head, neck, and chest. The appellant's fingerprints were found on a number of items in Underwood's house. After the appellant became a suspect in Underwood's murder, law enforcement officials located him in Canada, and he was *Page 612 
arrested and was returned to Alabama to face charges for the crime. The appellant's wife subsequently contacted law enforcement officials and told them that the appellant had stored a television set taken from Underwood's house in a travel trailer in Covington, Louisiana, where the appellant was residing around the time of the offense. Officers obtained and executed a warrant to search the travel trailer, and found Underwood's television set inside. A cellmate of the appellant's testified that the appellant admitted to him that he had broken into Underwood's residence, that he had killed her so she could not identify him, and that he had taken her television set to the travel trailer in Louisiana. A psychologist who had interviewed the appellant testified that the appellant had told him that he entered Underwood's house through a back window with the intention of stealing items from the house.
Following a trial in April 1990, a jury found the appellant guilty of capital murder for the killing of Underwood; the trial court subsequently sentenced him to death. However, in Neal v.State, 612 So.2d 1347 (Ala.Cr.App. 1992), this court reversed the appellant's conviction after finding that the state had violated the principles of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in its use of peremptory strikes against potential jurors. After a second trial in March 1994, the appellant was again convicted of capital murder; he was again sentenced to death. This appeal followed.
 I
The appellant contends that the trial court erred in denying his motion seeking a change of venue because of pretrial publicity.
 "A trial court is in a better position than an appellate court to determine what effect, if any, pretrial publicity might have in a particular case. The trial court has the best opportunity to evaluate the effects of any pretrial publicity on the community as a whole and on the individual members of the jury venire. The trial court's ruling on a motion for a change of venue will be reversed only when there is a showing that the trial court has abused its discretion. Nelson v. State, 440 So.2d 1130 (Ala.Cr.App. 1983)"
Joiner v. State, 651 So.2d 1155, 1156 (Ala.Cr.App. 1994).
In his brief to this court, the appellant set out in detail specific testimony and evidence presented at a hearing on the motion for a change of venue made during his first trial. Before his second trial, which was conducted three years later, the appellant "updated" this information and resubmitted it at the hearing on his motion for a change of venue. The appellant also introduced evidence of various local television and radio news reports and newspaper articles that appeared before his second trial.[1] The appellant argues that he could not receive a fair and impartial trial in Baldwin County due to the continued and extensive pretrial publicity before his second trial.
In Ex parte Grayson, 479 So.2d 76 (Ala.), cert. denied,474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985), the Alabama Supreme Court set forth the standard that a trial court should use in deciding whether to grant a motion for a change of venue based upon pretrial publicity:
 "In order to grant a motion for change of venue, the defendant must prove that there existed actual prejudice against the defendant or that the community was saturated with prejudicial publicity. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Franklin v. State, 424 So.2d 1353 (Ala.Cr.App. 1982). Newspaper articles or widespread publicity, without more, are *Page 613 
insufficient to grant a motion for change of venue. Anderson v. State, 362 So.2d 1296, 1298
(Ala.Cr.App. 1978). As the Supreme Court explained in Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1961):
 "`To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. . . .'
 "The standard of fairness does not require jurors to be totally ignorant of the facts and issues involved. Murphy v. Florida, 421 U.S. 794, 799-800, 95 S.Ct. 2031, 2035-2036, 44 L.Ed.2d 589 (1975). Thus, `the proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination.' Anderson v. State, 362 So.2d 1296, 1299 (Ala.Cr.App. 1978)."
479 So.2d at 80.
Here, the trial court conducted an extensive voir dire examination of the entire jury venire as a group and then of each prospective juror individually. The prosecuting attorney and the appellant's attorney were given an opportunity to question the prospective jurors regarding their knowledge of the facts surrounding the case based on what they had learned from the media coverage. Some of the jurors recalled that a murder had occurred in Foley in 1987, but they could not remember any specific facts surrounding the murder. Those jurors who could remember details of the crime either were struck for cause or were allowed to remain on the venire because they stated that they would not be prejudiced in any way by their knowledge of the case.
The appellant argues that prospective jurors who stated that they had no prior knowledge of the case did so solely to increase the likelihood that they would serve on the jury. However, after reviewing the voir dire testimony in the record, we do not agree. As indicated, several prospective jurors admitted to having prior knowledge of the murder. The appellant's attorney questioned those jurors regarding their prior knowledge but failed to make any motion that the trial court strike them for cause. As this court stated in Grayson, supra, the defendant is not entitled to jurors who are totally ignorant of the facts and issues involved in the case or who have never entertained a preconceived notion as to the defendant's guilt or innocence. Grayson, 479 So.2d at 80. We also note that the appellant's second trial took place approximately seven years after the murder. The passage of time cannot be ignored as a factor in bringing objectivity to a case in which there has been extensive pretrial publicity. Holladay v.State, 549 So.2d 122 (Ala.Cr.App. 1988), aff'd, 549 So.2d 135
(Ala.), cert. denied, 493 U.S. 1012, 110 S.Ct. 575,107 L.Ed.2d 569 (1989). The appellant has failed to prove any actual prejudice against him from pretrial publicity. See Grayson, 479 So.2d at 80.
As noted above, the appellant submitted numerous newspaper articles to support his contention that the pretrial publicity had saturated the community. "Newspaper articles alone would not necessitate a change of venue unless it was shown that the articles so affected the general citizenry through the insertion of such sensational, accusatory or denunciatory statements, that a fair and impartial trial was impossible." Oryang v. State,642 So.2d 979, 983 (Ala.Cr.App. 1993). The newspaper articles submitted by the appellant are predominantly factual summaries reporting that the trial judge had denied the appellant's motion for a change of venue, that the appellant's second trial would be held in Baldwin County, that the appellant had been convicted of capital murder *Page 614 
in 1990, and that that conviction was overturned and a new trial ordered. The articles merely report the actual events as they progressed and were not sensational in any manner. They do not accuse or suppose, and they are not sensational or denunciatory.
 "[A] change of venue must be granted only when it can be shown that the pretrial publicity has so `pervasively saturated' the community as to make the `court proceedings nothing more than a "hollow formality"' . . . or when actual prejudice can be demonstrated. The burden of showing this saturation of the community or actual prejudice lies with the appellant."
Oryang, 642 So.2d at 983. The appellant has failed to prove that the community was so saturated with pretrial publicity as to make the court proceedings nothing more than "a hollow formality" 642 So.2d at 983.
The appellant has failed to satisfy the test set out inGrayson, because he has not proven that there existed actual prejudice against him or that the community was saturated with prejudicial pretrial publicity. Our review convinces us that the trial court did not abuse its discretion in denying the appellant's motion for a change of venue.
 II
The appellant next contends that the trial court erred in denying his motion to suppress evidence of Underwood's television seized during the search of the travel trailer in Covington, Louisiana. He specifically argues (1) that the affidavit in support of the search warrant did not provide probable cause for the issuance of the warrant and (2) that even if probable cause was established, the affidavit did not contain sufficient information to confirm the reliability of the informant who had supplied the information contained in the affidavit.
The evidence presented at the suppression hearing showed that after Underwood's murder, the appellant's wife, Tina Neal, contacted Kenneth Estes, Jr., a criminal investigator for the Mississippi Highway Patrol, on two separate occasions. On the first occasion, she told Estes that the appellant was in Canada; that information led to the appellant's arrest. Thereafter, she contacted Estes again and told him that the appellant had obtained two color television sets and that the had given one television to his sister and that the other television was in the trailer in Louisiana, where she had previously resided with the appellant. Testimony indicated that the trailer was registered in the name of the appellant's sister and was located on property belonging to the appellant's grandparents, behind the grandparents' residence. The appellant's wife testified that before leaving Louisiana for Canada, the appellant "gave" the trailer to his mother and stepfather, saying that the never intended to return to it. A search warrant was obtained to search the trailer. While the warrant was being executed, the appellant's grandfather obtained the key to the trailer from the appellant's grandmother, opened the door, and allowed law enforcement officers to enter. Underwood's television set was found in the trailer, which was not occupied at the time of the search.
The state contends that the appellant lacked standing to challenge the search because, it says, he had no expectation of privacy in the area searched. Specifically, the state argues that the appellant lacked standing because, it says, the had abandoned the travel trailer and its contents when the fled to Canada after the crime and because the trailer was registered his sister's name.
When a motion to suppress evidence a criminal case states as a ground the evidence was obtained in violation of the Fourth Amendment, one issue is whether the movant has standing to assert the claim and to seek to exclude the evidence. See 5 W. LaFave, Search and *Page 615 Seizure § 11.3 (3d ed. 1996). The rights afforded protection by the Fourth Amendment are personal rights. See Simmons v.United States, 390 U.S. 377, 389, 88 S.Ct. 967, 973-74,19 L.Ed.2d 1247 (1968). To have standing to object to a search, the objecting party must have a present possessory interest in the premises searched. Rakas v. Illinois, 439 U.S. 128, 133-34,99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). A party will not prevail if it appears that he or she had abandoned the premises before the objected-to search. See 5 LaFave, Search and Seizure, § 11.3(a); Abel v. United States, 362 U.S. 217, 80 S.Ct. 683,4 L.Ed.2d 668 (1960) (defendant could not object to a search of a hotel room that he had vacated before the search). However, the inquiry does not stop there. The "`capacity to claim the protection of the [Fourth] Amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion.'" Mancusi v. DeForte, 392 U.S. 364, 368,88 S.Ct. 2120, 2124, 20 L.Ed.2d 1154 (1968), quoting Katz v.United States, 389 U.S. 347, 352, 88 S.Ct. 507, 511-12,19 L.Ed.2d 576 (1967).
We find that the appellant had no expectation of privacy in the travel trailer in which Underwood's television was found. The evidence indicated that the appellant had abandoned the trailer when he fled to Canada. This conclusion is supported by the testimony of his wife that the appellant had given the trailer to his mother and stepfather and had stated that he never intended to return to it. Thus, the appellant had no standing to challenge the search.
Furthermore, even if the appellant had established his standing to contest the search of the trailer, the search is nonetheless due to be upheld. The appellant's grandparents, upon whose property the trailer was located, consented to the search. Thus, the search was done with the consent of persons with authorized access to the trailer. See Daniels v. State, 534 So.2d 628
(Ala.Cr.App. 1985), aff'd, 534 So.2d 656 (Ala.), cert. denied,479 U.S. 1040, 107 S.Ct. 898, 93 L.Ed.2d 850 (1987).
We also find that there was sufficient probable cause to support the issuance of the warrant to search the trailer.
Probable cause must be determined by an analysis of the "totality of the circumstances." Marks v. State, 575 So.2d 611
(Ala.Cr.App. 1990). See Illinois v. Gates, 462 U.S. 213, 238,103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). In determining whether to issue a search warrant, the issuing magistrate is to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of the person supplying the information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Marks
supra; Gates, supra. Our duty as a reviewing court is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. Marks, supra; Gates, supra.
Here, the search warrant was obtained by the affiant, Detective Roy G. Spinks, of the Covington, Louisiana, Police Department. Spinks stated in the affidavit that the suspect's wife had advised Investigator Kenneth Estes, who had in turn informed him, that; Underwood's television, which could be identified by its serial number, was in the Louisiana travel trailer. The affidavit described the trailer, its location, the items to be seized, and the facts supporting the issuance of the warrant. The affidavit stated that the appellant was wanted for the murder of an elderly woman and that during commission of that offense a television had been taken. The affidavit included the serial number of the television.[2] *Page 616 
Although the information on the affidavit was given by the appellant's wife to Estes and then to Spinks, and was thus hearsay, probable cause may be based on hearsay if there is a disclosed, reliable basis for the information. Mauldin v. State,402 So.2d 1106 (Ala.Cr.App. 1981); see Marks, supra, andGates, supra. Information from fellow officers may be relied on.Marks; United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741,13 L.Ed.2d 684 (1965). "To comply with the requirement of particularity and to [enable the magistrate to] make an independent probable cause evaluation, . . . the agent must state in the affidavit that he is relying upon other officers'sMarks, 575 So.2d at 615, quoting United States v. Kirk,781 F.2d 1498, 1505 (11th Cir. 1986). Courts have consistently held that another law enforcement officer is a reliable source and that, consequently, no special showing of reliability need be made as a part of the probable cause determination. Marks; 2 LaFave, Searchand Seizure § 3.5(a). This is important when the law enforcement officer is a link in the chain of communication. Marks; see also State v. Alderete, 88 N.M. 14, 536; P.2d 278 (1975) (probable cause for an arrest warrant was properly provided by "double hearsay" in the affidavit of a police detective, who had based his on information on his examination of a police report); United States v. Asselin, 775 F.2d 445 (1st Cir. 1985) (rejecting hearsay objection where affiant set out what a police officer was told by his informant); State v.Pontier, 103 Idaho 91, 645 P.2d 325 (1982) (information passed from California narcotics agent to Idaho agent and then to affiant held sufficient to establish probable cause);Commonwealth v. Musi, 486 Pa. 102, 404 A.2d 378 (1979) (rejecting hearsay objection where eyewitness gave his information to one police officer and that officer then telephoned the information to another officer who acted as affiant to obtain the search warrant).
The appellant also challenges the reliability of the initial "informant," i.e., Tina Neal. Tina Neal was the appellant's wife, and was named in the affidavit. Tina Neal was not a confidential information; therefore, there was no reason for Spinks to set out in the affidavit why he believed the information to be reliable. Courts have consistently held that the proof-of-veracity rules applied in informant cases do not apply with respect to other sources of information, such as when an "ordinary citizen" or "citizen-informer" comes forward and reports to the police that he has seen evidence of a crime located at a certain place or that someone has admitted participation in criminal activity to him. 2 LaFave, Search andSeizure § 3.4 (a). See, e.g., Hamm v. State,564 So.2d 453,460 (Ala.Cr.App. 1989), aff'd, 564 So.2d 469 (Ala.), cert. denied, 498 U.S. 1008, 111 S.Ct. 572, 112 L.Ed.2d 579 (1990);Gratton v. State, 456 So.2d 865, 870 (Ala.Cr.App. 1984);Mauldin, 402 So.2d at 1108.
 "`An issuing judge's determination that sufficient probable cause existed to support the warrant is "entitled to great deference and is conclusive in the absence of arbitrariness." United States v. Pike 523 F.2d 734 (5th Cir. 1975), reh'g denied, 525 F.2d 1407, cert. denied, 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976).'"
Drake v. State, 668 So.2d 877, 880 (Ala.Cr.App. 1995), quotingWamble v. State, 593 So.2d 109, 110 (Ala.Cr.App. 1991).
The affidavit supporting the warrant was sufficient to establish probable cause that the television from Underwood's house was in the travel trailer, despite any minor inaccuracies in the affidavit and despite the appellant's suggestion that the reliability of the initial source of information had not been shown. The trial court did not err in denying the appellant's motion to suppress. *Page 617 
 III
The appellant next contends that he was convicted on the perjured testimony of one of the state's witnesses and that the trial court should have suppressed that witness's testimony. He maintains that the trial court erred in denying his motion for a new trial based on this ground
The state's witness, Floyd Keyes, was a cellmate of the appellant's while both men were incarcerated in the Baldwin County jail. The record reveals that Keyes testified at the appellant's first; trial and that his testimony was read into the record at the appellant's second trial Keyes testified that the appellant had confessed to him that he had commitited the crime at Underwood's house. Keyes was thoroughly questioned by the prosecutor and the appellant's attorney and adamantly denied that he had agreed to testify against the appellant in exchange for leniency from the prosecutor's office as to criminal charges he was facing at the time. The appellant maintains that Keyes "appeared to commit perjury" because the prosecution apparently made a "deal" with Keyes, whereby, in exchange for his testimony against the appellant, he was permitted to enter a plea of guilt to a third-degree burglary charge that he faced and was given a probationary sentence
In Ex parte, Frazier, 562 So.2d 560 (Ala. 1989), the Alabama Supreme Court set out guidelines to be followed in a case where allegedly perjured testimony is given in death penalty cases. In order to be awarded a new trial because of perjured testimony, the defendant must establish, to the trial court's reasonable satisfaction, the following: "(1) that testimony given by a witness at trial was false; (2) that there is a significant chance that had the jury heard the truth, it would have reached a different result; and (3) that the movant is not relying on evidence of which he was aware at trial which he consciously decided not to challenge the testimony, of the perjured witness." Frazier; 562 So.2d at 570. With regard to the standard, a presumption of correctness is indulged in favor of the trial court's factual findings on the issue of the alleged perjury, and a trial court's ruling on a motion alleging perjury will be upheld on appeal unless it is "clearly erroneous." Id.
Here, the appellant has completely failed to meet the first prong of Frazier; i.e., he has failed to demonstrate that the testimony given by Keyes was false. Although Keyes did receive probation, he and every member of the Baldwin County prosecutor's office with knowledge of the matter unequivocally denied that Keyes had been promised a lenient sentence in exchange for his testimony against the appellant. The record reflects that the plea offer made to Keyes on the charges against him was made some six weeks before Keyes approached the prosecutor's office with information that the appellant had confessed to him. The appellant has offered nothing to show that a "deal" had been struck in exchange for Keyes's testimony or that Keyes's testimony was false. Therefore, the trial court did not err in refusing to suppress Keyes's testimony and in denying the appellant's motion for a new trial based on this ground.
 IV
The appellant next contends that the trial court erred by charging the jury on the presumption of competency during a competency hearing held before his first trial.
Before the appellant's first trial, a competency hearing was held before a jury. The appellant was found competent to stand trial and was subsequently convicted of capital murder. Before the appellant's second trial, he was again evaluated and found competent to stand trial. This time, however, the trial court did not conduct a competency hearing before a jury, and the appellant's counsel agreed that there was nothing to suggest incompetency. The appellant now finds fault with the trial court's jury charge given during the competency *Page 618 
hearing held before his first trial. Any issue concerning that jury charge or that competency hearing became moot when the appellant's first conviction was reversed by this court and he received a new trial.
 V
The appellant next; contends that the trial court erred in denying his motion to set aside the jury's advisory verdict of death. He further contends that the trial court erred in granting the state's motion to quash subpoenas of various jurors and newspaper reporters
At the sentencing phase of the trial, the jury returned an advisory verdict of a vote of 10-2, recommending death. The trial court accepted the jury's recommendation and sentence the appellant to death. Several days after the jury returned its recommendation, the appellant filed a motion to set aside the advisory verdict and submitted an article that had appeared in a local newspaper quoting an unnamed juror who had allegedly stated that the jury recommended the death sentence because of the "severity of the murder." The appellant also renewed his motion several weeks later, submitting another newspaper article in which a juror discussed the inconveniences of being sequestered during the trial and spoke of his knowledge of the history of the trial." The appellant subpoenaed jurors and newspaper reporters to testify at the hearing on the motion to set aside the advisory verdict. The trial judge determined that the testimony that the jurors would give would tend to impeach the jury's verdict and that therefore, it could not be considered by the court.
 "`As a general rule, neither testimony nor affidavits are admissible to impeach a jury's verdict. An exception to this rule exists when an affidavit tends to show extraneous facts that have influenced the jury's deliberations and the resulting verdict. Affidavits, such as the one at issue here, concerning "the debates and discussions of the case by the jury while deliberating thereon" do not fall within the exception to the rule."'
Barbour v. State, 673 So.2d 461, 469 (Ala.Cr.App. 1994), aff'd,673 So.2d 473 (Ala.), cert. denied, 518 U.S. 1020,116 S.Ct. 2556, 135 L.Ed.2d 1074, quoting Alabama Power Co. v. Turner,575 So.2d 551, 556-57 (Ala.), cert. denied, 500 U.S. 953,111 S.Ct. 2260, 114 L.Ed.2d 713 (1991).
The appellant attempts to impeach the jury's advisory verdict by showing that, by considering the "severity of the murder," the jurors improperly considered an aggravating circumstance not charged by the trial court. He also attempts to impeach the verdict by showing that a juror knew the "history of the trial" and therefore considered extraneous facts outside those presented at trial. We are not persuaded by the appellant's arguments. First, the question whether jurors considered an aggravating circumstance not charged by the trial court would concern the "debates and discussions" of the jury during its deliberations and does not fall within the exception to the anti-impeachment rule. Furthermore, it was clearly established during voir dire that many of the jurors knew that this was a retrial and knew some of the facts and circumstances surrounding the appellant's case. The appellant has failed to show that this knowledge equates to the jurors' considering extraneous facts. The trial court did not err in quashing the appellant s subpoenas and in denying his motion to set aside the jury's advisory verdict.
 VI
Finally, the appellant contends that there was insufficient evidence to sustain a capital murder conviction. Specifically, he maintains that the state failed to prove that he murdered Underwood.[3] *Page 619 
 "`"In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution."'"
Rutledge v. State, 680 So.2d 997, 999 (Ala.Cr.App. 1996), quoting Allen v. State, 611 So.2d 1188, 1192 (Ala.Crim.App. 1992) (citations omitted).
Furthermore, in reviewing a conviction based on circumstantial evidence, this court must view the evidence in the light most favorable to the prosecution. "The test to be applied is whether the jury might reasonably find that the evidence excluded ever reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude." White v. State,546 So.2d 1014, 1016 (Ala.Cr.App. 1989). "`Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused.'" White, 546 So.2d at 1017 quoting Cochran v.State, 500 So.2d 1161, 1177 (Ala.Cr.App. 1984), rev'd in part,500 So.2d 1179 (Ala. 1985) (citations omitted). Applying these principles to the facts of this case, we find that there is sufficient evidence from which the jury could conclude that the evidence excluded every reasonable hypothesis except that of guilt.
Here, the state's evidence showed that Underwood was found beaten to death in her residence. The appellant's fingerprints were found on items in Underwood's ransacked house. The state established that the appellant, a resident of Louisiana, was in Alabama on the day of the murder, because on that day he received a traffic citation in Grove Hill, a two-and-one-half-hour drive from Foley. After the appellant became a suspect in Underwood's murder, he fled to Canada. The appellant told his wife that he was want for questioning by the police regarding an incident in which his uncle had hit a woman. Based on information provided by the appellant's wife, Underwood's missing television was subsequently located in a travel trailer in Louisiana, where the appellant and his wife had previously resided. The appellant's wife had seen the television in the appellant's possession. Floyd Keyes, a cellmate of the appellant's, testified that the appellant had admitted to him that he had broken into Underwood's residence and had killed her to keep her from telling anyone what he had done. Dr. Robert DiFrancisco, a psychologist who interviewed the appellant following his arrest, testified that the appellant told him that he had entered Underwood's house through a back window with the intention of stealing items inside. Although Dr. DiFrancisco testified that the appellant had denied killing Underwood and had suggested to him that his uncle, who, the appellant claimed, had also participated in the break-in, had committed the murder, the uncle's fingerprints were not found at the crime scene.
The state's evidence supports a finding that the appellant murdered Underwood during the course of a burglary. This court will not substitute its judgment for that of the jury. Rutledge, supra. "`Taking all the evidence and the manner in which the individual facts connect and mingle, and viewing it in the light most favorable to the prosecution, we find that the evidence excluded every reasonable hypothesis or explanation but that of guilt.'" Jenkins v. State, 627 So.2d 1034, 1041 (Ala.Cr.App. 1992), aff'd, 627 So.2d 1054 (Ala. 1993), cert. denied,511 U.S. 1012, 114 S.Ct. 1388, 128 L.Ed.2d 63 (1994) (citation omitted).
 VII
In accordance with Rule 45A, Ala. R.App.P, we have examined the record for any plain error with respect to the appellant's capital murder conviction and death sentence, whether or not brought to our attention or the attention of the trial *Page 620 
court. We find no plain error or defect in the proceedings, either in the guilt phase or in the sentence phases of the trial.
We have also reviewed the appellant's sentence in accordance with the provisions of § 13A-5-53, Ala. Code 1975, which requires that, in addition to reviewing the case for any error involving the appellant's capital murder conviction, we shall also review the propriety of the death sentence. This review requires that we determine: (1) whether any error adversely affecting the rights of the defendant occurred in the sentence proceedings; (2) whether the trial court's findings concerning the aggravating and mitigating circumstances were supported by the evidence; and (3) whether death is the appropriate sentence in the case. Section 13A-5-53(b) requires that, in determining whether death is the proper sentence, we determine: (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) whether an independent weighing by us of the aggravating and mitigating circumstances indicates that death is the proper sentence; and (3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
After the jury convicted the appellant of the capital offense charged in the indictment, a separate sentence hearing was held before the jury in accordance with §§ 13A-5-45 and -46, Ala. Code 1975. After hearing evidence concerning aggravating and mitigating circumstances; after being properly instructed by the trial court as to the applicable law; and after being correctly advised as to its function in reference to the finding of any aggravating and mitigating circumstances, the weighing of those circumstances, if appropriate, and its responsibility in reference to the return of an advisory verdict, the jury, by a vote of 10-2, recommended that the appellant be sentenced to death.
Thereafter, the trial court held another hearing, in accordance with § 13A-5-47, Ala. Code 1975, to aid it in determining whether it would follow the jury's recommendation and sentence the appellant to death or sentence him to life imprisonment without the possibility of parole. The trial court ordered and received a written presentence investigation report, as required by § 13A-5-47 (b). Upon conclusion of the hearing, the trial court entered specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13A-5-49, Ala. Code 1975, each mitigating circumstance enumerated in § 13A-5-51, Ala. Code 1975, as well as written findings of fact summarizing the offense and the appellant's participation in the offense.
In its findings of fact, the trial court found the existence of one aggravating circumstance: that the murder was committed during the course of a burglary in the first degree. § 13A-5-49 (4), Ala. Code 1975. The trial court found no statutory or nonstatutory mitigating circumstances. These findings are supported by the evidence. The trial court's sentencing order reflects that the trial court considered all the evidence presented, the arguments of counsel, the presented report, and the advisory verdict of the jury; that the trial court weighed the aggravating circumstance against the mitigating circumstances; and, finding the existence of one aggravating circumstance and no mitigating circumstances, the trial court sentenced the appellant to death.
The appellant was convicted of the offense of murder committed during the course of a burglary. § 13A-5-40 (4). This offense is defined by statute as a capital offense. We take judicial notice that similar crimes have been punished capitally throughout the state. See Stewart v. State, 601 So.2d 491
(Ala.Cr.App. 1992), aff'd. as to conviction, rev'd as to sentence, with new sentencing proceeding ordered, 659 So.2d 122
(Ala. 1993), (murder/burgrlary and murder/kidnapping); *Page 621 Thomas v. State, 539 So.2d 375 (Ala.Cr.App.), aff'd,539 So.2d 399 (Ala. 1988), cert. denied, 491 U.S. 910, 109 S.Ct. 3201,105 L.Ed.2d 709 (1989) (murder/burglary); Lynn v. State,543 So.2d 704 (Ala.Cr.App. 1987), aff'd, 543 So.2d 709 (Ala. 1988), cert. denied, 493 U.S. 945, 110 S.Ct. 351, 107 L.Ed.2d 338 (1989) (murder/burglary), Ford v. State, 515 So.2d 34 (Ala.Cr.App. 1986), aff'd, 515 So.2d 48 (Ala. 1987), cert. denied,484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023 (1988) (murder/burglary).
After carefully reviewing the record of the guilt phase and the sentence phase of the appellant's trial, we find no evidence that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. We conclude that the findings and conclusions of the trial court are amply supported by the evidence. We concur in the recommendation of the jury and in the judgment of the trial court that death is the appropriate sentence in this case. We have independently weighed the aggravating circumstance against the mitigating circumstances, and we find that the aggravating circumstance clearly outweighs the mitigating circumstances, and we are convinced that the sentence of death is appropriate for this defendant. Considering the crime committed and the defendant, we find that the sentence of death is neither excessive nor disproportionate to the penalty inclosed in similar cases.
For the foregoing reasons the judgment of the trial court convicting the appellant and sentencing him to death is due to be, and is hereby, affirmed.
AFFIRMED.
McMILLAN, COBB, and BROWN,* JJ., concur.
BASCHAB, J., recuses.
[1] The newspaper articles are the only evidence contained in the record for this court's review.
[2] We note that the affidavit contained a typographical error in the serial number of the television. There is no evidence that this inaccuracy was the result of an intentional misrepresentation.
[3] The appellant does not argue that the evidence was insufficient to prove that he committed a burglary.
* Although Judge Brown was not a member of the Court of Criminal appeals when this case was orally argued, she has listened to the tapes of the or argument.