Ronald Evans sued Fruehauf Corporation, alleging liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") and seeking damages for personal injuries. The jury returned a verdict for Fruehauf, and the trial court entered a judgment on that verdict. Evans appealed. We affirm.
Evans, a truck driver, alleged in his complaint that he had injured his back in 1987 while attempting to use a "converter dolly" that Fruehauf had manufactured and sold. The converter dolly, which Fruehauf sold to Evans's employer in 1984 and which Evans alleged was "defective," within the meaning of that term as it is used in our cases establishing the AEMLD, was a device used to connect two semi-trailers so that they could be pulled in tandem by one truck. The primary basis for Evans's claims, as stated in his brief, was that "the converter dolly . . . should have been equipped with a counterweight system in order to reduce the tongue weight (the effective weight required to be lifted by the truck driver)." After it sold the converter dolly to Evans's employer (1984), but before Evans was injured (1987), Fruehauf redesigned its line of converter dollies so as to provide a counterweight.
The sole issue presented on this appeal is whether the trial court erred in excluding from the evidence an internal memorandum prepared by a Fruehauf employee in 1986. That memorandum read, in pertinent part, as follows: *Page 719 
"SUBJECT:
"EL-FL1 Dolly Counterbalance
 "REASON FOR REQUEST — PRODUCT AFFECTED AND ANNUAL VOLUME: "Customers are complaining that the tongue weight on our dolly is excessive making it extremely hard for one person to maneuver during hook-up operations. In most cases a crank down type device or single support leg has to be added in order to raise and lower the tongue. This device adds weight and cost.
 "WHAT ACTION SHOULD BE TAKEN: "Add counterbalance as standard similar to that shown on the attached sketch provided by Detroit Engineering. Do not extend frame rearward any more than is necessary — thereby maintaining proper clearance for supports on trailing unit. This should reduce tongue weight to 100 lbs. or less, which is what customers are requesting. Stiff leg support should be retained to keep lunette eye from dropping to the ground.
"COST IMPACT: NO CHANGE
"(DESCRIPTION)
 "Cost of counterbalance is about the same as one stiff leg support.
". . . .
"COMMENTS:
 "Minor change — should not take long. Will give us a feature to sell."
Fruehauf initially contends that the issue concerning the admissibility of its internal memorandum was not preserved for appellate review. In the alternative, Fruehauf contends that evidence of a modification made to the design of a product after the product has been sold, but before the occurrence of an accident allegedly caused by that product, should fall under the general rule requiring exclusion of evidence of subsequent remedial measures. Citing several cases, Fruehauf argues that its internal memorandum would be inadmissible under that rule.[1] Evans argues that the issue presented was properly preserved for appellate review and, citing a number of cases and legal authorities, contends that the Fruehauf memorandum was not evidence of a subsequent remedial measure because it showed that Fruehauf had made the design change to its converter dollies before Evans was injured. In other words, Evans takes the position that a remedial measure must have been taken subsequent to the accident giving rise to the lawsuit in order to fall under the general rule governing the admissibility of evidence of subsequent remedial measures.[2]
After carefully reviewing the record in this case, we find it unnecessary to determine whether the Fruehauf memorandum was inadmissible under the general rule excluding evidence of subsequent remedial measures. Although the trial court stated in its order denying Evans's new trial motion that the Fruehauf memorandum was inadmissible under that rule, we agree with Fruehauf that during the trial Evans's trial counsel waived the issue of the memorandum's admissibility.[3] *Page 720 
The trial court granted Fruehauf's pretrial motion in limine
to exclude evidence that Fruehauf had redesigned its converter dollies after 1984. In Bush v. Alabama Farm Bureau MutualCasualty Ins. Co., 576 So.2d 175, 177-78 (Ala. 1991), this Court stated:
 "We recognize that the trial court has broad discretion in evidentiary matters. The general rule was stated in State v. Askew, 455 So.2d 36
(Ala.Civ.App. 1984), citing C. Gamble, The Motion in Limine: A Pretrial Procedure That Has Come of Age, 33 Ala.L.Rev. 1 (1981), as follows:
 " 'In keeping with the vesting of broad discretion in the trial court in this area, it is generally held that the granting of a motion in limine can never be reversible error. The non-moving party may repeat at trial, preferably out of the hearing of the jury, his request for permission to prove the contested matter. This offer of proof is required in order to isolate the error for appeal. It is this refusal at trial to accept that proffered evidence, not the granting of the pretrial motion in limine, that serves as the basis for reversible error. Of course, this ability to bring up the matter a second time would not be available if counsel had requested and the judge had granted a prohibitive-absolute motion in limine.'
 "455 So.2d at 37 (Ala.Civ.App. 1984). In Perry v. Brakefield, 534 So.2d 602, 607 (Ala. 1988), this Court cited Professor Gamble and stated: 'The clear holding of these cases is that unless the trial court's ruling on the motion in limine is absolute or unconditional, the ruling does not preserve the issue for appeal.' 534 So.2d at 606."
(Emphasis in original.) Evans acknowledges that there is no indication in the record that the trial court's ruling on Fruehauf's motion in limine was absolute or unconditional. Therefore, Evans had to offer the contested memorandum at the trial and obtain a specific adverse ruling in order to preserve the issue for appellate review.
One of the issues at the trial was whether Fruehauf had had a counterweight available as optional equipment for use on its converter dollies in 1984. Fruehauf argued that a converter dolly equipped with a counterweight was available in 1984, but that Evans's employer had chosen not to order one. To rebut that argument, and to counter the testimony of an adverse witness, Billy Harris, a former Fruehauf branch manager whom Evans had called to testify and who had stated that Fruehauf offered a counterweight as "optional" equipment in 1984, Evans sought to introduce the Fruehauf memorandum, as well as certain portions of the deposition testimony of Brian Stafford, Fruehauf's director of engineering, that, according to Evans, contradicted Harris's testimony. During extensive arguments by counsel for both parties and during a lengthy discussion among counsel and the trial court as to whether Evans was attempting to improperly impeach his own witness (Harris) and as to whether Stafford's deposition testimony and the Fruehauf memorandum were inadmissible as evidence of subsequent remedial measures, the following colloquy occurred among Evans's trial counsel, Fruehauf's counsel, and the trial court:
 "[Evans's attorney]: Y'all have got it [counterweight] optional equipment that [Evans's employer] turned down, like [Evans's employer] chose not to have that counterweight. And that was not so, just wasn't so.
". . . .
 "[Fruehauf's attorney]: So we admit that Harris said that [the counterweight] was an option, because he did say it. I may have marked it down, underlined it.
 "The Court: Let me think about it for a second here.
 "[Evans's attorney]: Judge, really, the way [Stafford's] deposition reads, the [Fruehauf memorandum] establishes the time and the reason that they did it.
 "[Fruehauf's attorney]: So does Brian Stafford's testimony, Judge.
 "[Fruehauf's attorney]: The reason ain't important.
 "[Evans's attorney]: Well, it establishes the time.
". . . . *Page 721 
 "[Evans's attorney]: It establishes the time, that happened, how they did it. Now, they've got one man, the salesman [Harris], who says [that a counterweight was] optional equipment [in 1984], [Evans's employer] turns it down. And yet, their corporate representative —
 "[Fruehauf's attorney]: Wait a minute, please. Nobody ever said [that Evans's employer] turned it down. Nobody has said that, Judge.
 "[Evans's attorney]: If it was optional equipment, they didn't get it.
 "The Court: Let me think about this. Although you [called Harris] as an adverse witness, that doesn't make him Fruehauf's witness. So Fruehauf didn't necessarily take the position that this man was — I mean that the [counterweight was available as an] option . . . back in 1984.
 "[Evans's attorney]: Well, he said it, Judge. I'm still entitled to impeach him.
"The Court: I understand.
 "[Evans's attorney]: That's something I have got to overcome.
 "The Court: You're entitled to some sort of impeachment. I don't think that necessarily opens the door to the entire document coming in.
 "[Evans's attorney]: Judge, really, I'm not so concerned — once I show that the salesman [Harris] said it was an option and in fact that's not true, this document is not really what I'm trying to get in.
". . . .
 "[Evans's attorney]: I don't care about this document, if I can get in all of this other stuff.
 "[Fruehauf's attorney]: Well, what you're trying to do is get in customer complaints about the weight of the tongue. You're not trying to impeach Billy Harris [concerning] an option. You're trying to get to the jury what the motion in limine was about. And that is customer complaint.
"[Evans's attorney]: Sure.
 "[Fruehauf's attorney]: That go to a subsequent remedial measure.
 "[Evans's attorney]: I don't care about the subsequent remedial measure.
". . . .
 "The Court: I don't think we need to get into a whole elaborate construct as to exactly — as to the history leading up to the development of this option [counterweight]. I think, you know, some brief admission will be sufficient that what Billy Harris said was wrong.
 "[Evans's attorney]: Judge, why couldn't we do that without — why couldn't we just say the document and not introduce the document necessarily?
"The Court: How would you do that?
 "[Evans's attorney]: He [Stafford] talks about . . . some documents. There was some time in the document —
 "[Fruehauf's attorney]: Well, Judge, I think there are two questions and two answers that go to this issue, and that's on the bottom of page 17 [of Stafford's deposition]: 'After the design of the Fruehauf converter dolly that's the question of this lawsuit, was any other optional equipment ever added, such as counterweights or balances to assist in the movement of this dolly?'
 "And he said, 'Fruehauf offers a dolly for sale currently that has a counterweight as part of the standard design.'
" 'When was that developed?
 " 'I don't know exactly when it was developed. I believe it was first offered for sale sometime around '89 or '90.' Now, if you were going to allow Billy Harris's testimony to be impeached, that does it. Nothing else.
". . . .
 "[Evans's attorney]: Now, Judge, the important part of this is not the [Fruehauf memorandum] that's the subject of [the] motion in limine. If there is some way that this could be structured so that [that] document does not come in, that's fine with me. That's not the purpose of what I'm doing.
 "The purpose is: They've talked about counterweights, counterweights, counterweights. I asked him [Harris] if the counterweight [was] available [in 1984]. He says yes. We know the counterweight *Page 722 
[was] not available [in 1984]. The salesman [Harris] is saying that it [was] available. It [was] not available. We want to show through the deposition of Mr. Stafford that the counterweight was not available and was not available until '88, '89, or whatever.
 "Now, if it can be done without the document, that's fine with us.
". . . .
 "[Evans's attorney]: Judge, what I would like is some direction in how to go through this area. Does this bring the document in? If not, what direction do I go to keep the document out to fairly present the evidence that I want to present? I'm not here trying [to hoodwink] something in. But I want to know does it bring it in? If it doesn't bring it in, how do I structure this so that I can get this evidence in testimony before the court without breaking the motion?
 "The Court: Number one, it does not open the door. This sequence of testimony [by Harris] did not open the door to let in the document.
 "I do not believe that Fruehauf had anything to do with the testimony that came out. And this was not Fruehauf's witness. So it did not open the door.
 "[Evans's attorney]: I'm not going to except to that, Judge.
 "The Court: But number two, I think that if you can introduce the relevant portions of [Stafford's] deposition, that will accomplish what you want. I think you will have information before the jury that the counterbalance wasn't available until '89, '90.
 "[Evans's attorney]: If you look at the deposition, he says the document gives a reason for his request. But he doesn't state what the document says.
 "[Fruehauf's attorney]: No, I don't want anything about the document.
 "Judge, it is inconceivable to me that . . . a person can take a part of this deposition and get in remedial work after the accident and get all of these document things in and then come and use that and prove all of that. It's inconceivable to me.
 "[Evans's attorney]: Okay. I can do this: What about stopping [the reading of the deposition] right here?
 "[Fruehauf's attorney]: Wait just a minute. Wait just a minute. And that's what they're trying to do.
 "[Evans's attorney]: I'm going to give you what you want. I'm going to give you what you want.
 "[Fruehauf's attorney]: The point being, Judge, that the deposition of a party can be used for any purpose that is legal. But you can't go take a party's deposition and explore subsequent remedial measures —
 "[Evans's attorney]: I'm trying to concede it, if you will let me show you how. Why not stop [reading the deposition] right here? 'I don't know when it was developed. I believe it was first offered for sale sometime around 1989, 1990.'
 "The Court: I think that will answer the question.
 "[Fruehauf's attorney]: All right. Will you read that, and then let us make a formal objection so we won't have to do it out there? Read the question and the answer.
". . . .
 "The Court: Let's go with the passage from Mr. Stafford's deposition that you said you've read."
As these portions of the record show, Evans's trial counsel conceded the issue with respect to the admissibility of the Fruehauf memorandum and effectively withdrew his offer to admit that document. Evans was allowed, over Fruehauf's objection, to introduce into evidence portions of Stafford's deposition that informed the jury of Fruehauf's design change. According to Evans's attorney, Stafford's deposition was the evidence that he was most concerned about getting before the jury. It was in an attempt to get that evidence admitted that he abandoned his effort to admit the memorandum. For the foregoing reasons, we find no basis for reversing the judgment.
AFFIRMED.
MADDOX, SHORES, STEAGALL and INGRAM, JJ., concur.
[1] In support of its alternative argument, Fruehauf relies primarily on the following cases: Alabama Power Co. v. MarineBuilders, Inc., 475 So.2d 168 (Ala. 1985); Petree v. VictorFluid Power, Inc., 831 F.2d 1191 (3d Cir. 1987); Cook v.McDonough Power Equipment, Inc., 720 F.2d 829 (5th Cir. 1983);Grenada Steel Industries, Inc. v. Alabama Oxygen Co.,695 F.2d 883 (5th Cir. 1983); Ellis v. Golconda Corp.,352 So.2d 1221 (Fla.Dist.Ct.App. 1977), cert. denied, Peterson v.McKenzie Tank Lines, Inc., 365 So.2d 714 (Fla. 1978); Kaczmarekv. Allied Chemical Corp., 836 F.2d 1055 (7th Cir. 1987).
[2] In support of this position, Evans relies primarily on the following cases and legal authorities: Phar-Mor, Inc. v. Goff,594 So.2d 1213 (Ala. 1992); Blythe v. Sears, Roebuck Co.,586 So.2d 861 (Ala. 1991); C. Gamble, McElroy's Alabama Evidence § 189.02(1) (4th ed. 1991); C. Gamble G. Windle, SubsequentRemedial Measures Doctrine in Alabama: From Exclusion toAdmissibility and the Death of Policy, 37 Ala.L.Rev. 547 (1986); K. Ingram, Introduction of Subsequent Remedial MeasuresThrough Impeachment, Alabama Trial Lawyers Association "No Nonsense Seminar," Gulf Shores, August 15, 1991 (unpublished); 29 Am.Jur.2d Evidence § 275 (1967); Annot., Admissibility ofEvidence of Repairs, Change of Conditions, or Precautions TakenAfter Accident, 64 A.L.R.2d 1296 (1959); 31A C.J.S.Evidence § 291 (1964); 23 C. Wright K. Graham, FederalPractice and Procedure, § 5283 (1980); J. Weinstein and M. Berger, Weinstein's Evidence § 407(01) (1992); and Rule 407 of the proposed Alabama Rules of Evidence and the advisory committee's notes thereto.
[3] Evans's appellate counsel did not represent Evans at the trial. *Page 723