836 So.2d 979 (2002)
Ex parte Shonelle JACKSON.
(In re Shonelle Jackson v. State of Alabama.
1981723.
Supreme Court of Alabama.
May 10, 2002.
*981 Bryan A. Stevenson and Randall S. Susskind, of Equal Justice Initiative of Alabama, Montgomery, for petitioner.
Bill Pryor, atty. gen., and Kathryn D. Anderson and Anne C. Adams, asst. attys. gen., for respondent.
PER CURIAM.
The opinion of February 15, 2002, is withdrawn and the following is substituted therefor.
Shonelle Jackson was convicted of murder made capital because the killing occurred during the commission of a robbery in the first degree, see § 13A-5-40(a)(2), Ala.Code 1975; he was sentenced to death on that conviction. He was also convicted of first-degree theft of property, see § 13A-8-3, Ala.Code 1975, and on that conviction he was sentenced to life imprisonment as an habitual offender with three prior felony convictions, see § 13A-5-9(c)(2), Ala.Code 1975. The Court of Criminal Appeals affirmed both convictions and sentences. See Jackson v. State, 836 So.2d 915 (Ala.Crim.App.1999). This Court granted certiorari review, see Rule 39(c), Ala.R.App.P., as it read before it was amended effective May 19, 2000,[1] and remanded the case to the Court of Criminal *982 Appeals for that court to remand the case for the trial court to conduct a hearing outside the presence of the jury to determine the admissibility of Jackson's inculpatory statement. Ex parte Jackson, 836 So.2d 973 (Ala.2001). We instructed the Court of Criminal Appeals to forward the trial court's return to this Court. It appears that the trial court has complied with our directions and has conducted a hearing to determine the admissibility of Jackson's statement.

I.
Jackson contends that the trial court erred in denying his motion to suppress a statement he made to a law-enforcement officer because, he says, the officer tricked him into making the statement. "`In reviewing the correctness of the trial court's ruling on a motion to suppress, this Court makes all the reasonable inferences and credibility choices supportive of the decision of the trial court.'" Kennedy v. State, 640 So.2d 22, 26 (Ala.Crim.App.1993), quoting Bradley v. State, 494 So.2d 750, 760-61 (Ala.Crim. App.1985), aff'd, 494 So.2d 772 (Ala.1986), cert. denied, 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699 (1987). The trial court's ruling on a motion to suppress will not be disturbed unless it is palpably contrary to the great weight of the evidence. See Dixon v. State, 588 So.2d 903 (Ala. 1991); Parker v. State, 587 So.2d 1072, 1088 (Ala.Crim.App.1991); Rutledge v. State, 680 So.2d 997, 1002 (Ala.Crim.App. 1996); and Maples v. State, 758 So.2d 1 (Ala.Crim.App.1999), aff'd, 758 So.2d 81 (Ala.1999), cert. denied, 531 U.S. 830, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000).
Extrajudicial statements are prima facie involuntary and inadmissible; the duty rests on the trial court to determine whether the statement is voluntary, and unless it appears that it is voluntary it should not be admitted. See Farrior v. State, 728 So.2d 691 (Ala.Crim.App.1998). The burden is on the State to show voluntariness and a Miranda[2] predicate before such a statement can be admitted into evidence. See Lewis v. State, 535 So.2d 228 (Ala.Crim.App.1988). "Whether a waiver is voluntary, knowing, and intelligent depends on the particular facts and underlying circumstances of each case, including the background, experience, and conduct of the accusedi.e., the totality of the circumstances." Click v. State, 695 So.2d 209, 218 (Ala.Crim.App.1996). The voluntariness of an inculpatory statement remains undetermined until the trial court has examined the totality of the circumstances surrounding the statement. See Ex parte Hill, 557 So.2d 838, 841 (Ala. 1989).
The trial court's finding that a statement was voluntary need only be supported by a preponderance of the evidence. Dixon v. State, supra. The test for the voluntariness of an extrajudicial confession or an inculpatory statement is whether, in light of all the surrounding circumstances, the statement was free from inducement, threat, or promise, either expressed or *983 implied, that would have produced in the mind of the accused any fear of harm or hope of favor. Ex parte Price, 725 So.2d 1063 (Ala.1998), cert. denied, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999).
Moreover, "more subtle forms of psychological manipulation, such as trickery or deception by the police, have not been considered sufficiently coercive, standing alone, to render a confession or incriminating statement involuntary." Ex parte Hill, 557 So.2d at 841.
The trial court submitted the following order on return to remand:
"On August 31, 2001, the Alabama Court of Criminal Appeals remanded this case to the trial court to conduct proceedings consistent with the Opinion as written and released by the Alabama Supreme Court on May 18, 2001. The Alabama Supreme Court [had] remanded this case to the Alabama Court of Criminal Appeals with the instructions to order the trial court to conduct a hearing to determine the admissibility of Defendant Jackson's extrajudicial statement. The trial court appointed the Honorable Bryan A. Stevenson to represent the defendant at the hearing, which was conducted on October 24, 2001. At the hearing, the defendant was represented by Mr. Stevenson, as well as the Honorable Randall Susskind, both of the Equal Justice Initiative of Alabama. The State of Alabama was represented by the Honorable Susan Redmond, Chief Deputy District Attorney for Montgomery County. After hearing the testimony and accepting exhibits introduced into evidence, this Court advised the parties that they would have 7 days in which to present any Memorandum of Law supporting their respective positions. Defense counsel submitted a Memorandum of Law on November 2, 2001, and this Court has reviewed the same.
"The State of Alabama called its first and only witness, Detective A.J. Signore, of the Montgomery Police Department. Detective Signore testified that he had been employed with the Montgomery Police Department for 10 years, and in 1997, had been a homicide investigator. Pursuant to this case, Detective Signore testified that the defendant's mother signed a `consent to search' her home wherein detectives confiscated certain items, including .380-caliber bullets. The detectives, before leaving the defendant's mother's home, told the mother that if the defendant came home she was to notify [them] that the police would like to talk to him. Later that afternoon, the defendant went to police headquarters to talk to the detectives. At the hearing, Detective Signore testified that the defendant, who was 18 years old at the time, reported to the police headquarters where Detective Signore and his partner, Detective C.D. Phillips, were on duty. Detective Signore testified that the defendant was read his Miranda rights, after which he signed the waiver form indicating that he understood his rights, that he had not been promised anything or threatened in any way and that he wished to give a statement to the police. The defendant's statement was taken in Detective Signore's office at the Montgomery Police Department with Detective Phillips also present.*
"Initially, the defendant denied even knowing the three other codefendants that were involved in the shooting. Detective Signore testified at the hearing that he had statements from the 3 codefendants stating that all 3 of them knew the defendant and that the defendant had been involved in the shooting. Detective *984 Signore stated that in order to get the defendant to tell the truth about his relationship with the other 3 codefendants, he told the defendant that a Dairy Queen [fast-food restaurant] cup had been found in the vehicle with the defendant's fingerprints on it. After Detective Signore told the defendant this information, the defendant then told Detective Signore that, in fact, he did know the other codefendants, but denied any involvement in the shooting. After telling Detective Signore that he knew the other codefendants, he asked the detective if he could make another statement. In his second statement, Defendant Jackson admitted to having been with the other codefendants at the time of the murder and to possessing a .380 automatic pistol.
"The defense called Ms. Rosalyn Jordan as its first witness. Ms. Jordan is a sixth-grade teacher at Patterson Elementary School. She testified that the defendant had been a student in her classroom and her records indicated that he had failed the first and third grades. She stated that the defendant was a low-achiever and that he was 13 years old in the sixth-grade. She also stated that she had only seen the defendant a few times since he had been a sixth-grader in her class. The defense also called Ms. Thelma Owens, who is an employee at the Southern Poverty Law Center. She is related to the defendant, as his aunt, and she stated that she helped to raise him. She went on to state that the defendant was very respectful of her and any type of authority figures.
"There was absolutely no question that Detective Signore lied to the defendant about the fingerprints on the Dairy Queen cup. It is important to recognize, however, that the lie was told by Detective Signore only in order to find out if the defendant did, in fact, have a relationship with the other codefendants. The lie was not told to induce the defendant to confess [to] a crime. Alabama Courts have repeatedly held that a confession is not inadmissible merely because it was induced by a trick or misrepresentation. As defense counsel pointed out in its Memorandum of Law, although police deception is not conclusive as to the voluntariness of a statement, it is certainly a factor to be considered in the determination of its voluntariness. See Frazier v. Cupp, 394 U.S. 731[, 89 S.Ct. 1420, 22 L.Ed.2d 684] (1969). This Court would again note, however, that the deception used in this case was not deception that led to a confession to the actual crime. The deception or misrepresentation used by Detective Signore was only used in order to establish whether or not a relationship existed between the defendant and codefendants. After the statement was made concerning the fingerprints on the Dairy Queen cup, Defendant Jackson admitted only to knowing the codefendants, but denied any involvement in the actual crime.
"This Court must look at the totality of the circumstances in analyzing whether or not the defendant's extrajudicial statement was voluntary or not. The Court is convinced, after conducting the hearing, that the defendant did, in fact, voluntarily come to the police station and, after being read his Miranda rights and signing his waiver, he agreed to talk to the detectives. There was no testimony and/or evidence presented that would indicate that the defendant could not knowingly and voluntarily waive his rights and agree to talk with the detectives. There was also nothing unusual or extraordinary about the room in which the statement was taken, or the manner in which the statement was obtained. As Justice Stuart so ably stated *985 in her dissent [to the Supreme Court's opinion of May 18, 2001], there is no question that Detective Signore made misrepresentations concerning the fingerprints found on the Dairy Queen cup; however, whether or not the misrepresentations render a statement involuntary is a question of law and does not require the gathering of additional facts in order to make a decision. This trial court, however, has conducted the hearing as ordered by the majority and would point out that no new information or facts were gleaned from this hearing and this court finds that after examining the totality of the circumstances surrounding the statement of the defendant, said statement was made voluntarily and is therefore admissible.
"* Detective Signore's office in which the defendant's statement was taken is a normal detective office containing a desk and two chairs positioned facing the desk. Defense counsel went into very elaborate details about the office in its Memorandum of Law trying to show that the room would imply that the statement was not voluntary. The Court found nothing unusual, deceptive, or coercive about the room in which defendant's statement was taken at Montgomery Police Department Headquarters."
The trial court's findings are adequately supported by the record. We have carefully reviewed the record on return to remand to determine whether Jackson voluntarily and knowingly waived his Miranda rights before making the inculpatory statement to the police and whether the statement was voluntary. After considering the totality of the circumstances surrounding Jackson's statement, we conclude that the State met its burden in proving that Jackson voluntarily and knowingly waived his Miranda rights and that he made his statement voluntarily. The record does not reveal that Jackson was threatened or coerced into giving a statement. The weight and preponderance of the evidence support the trial court's decision to deny the motion to suppress. Therefore, the trial court did not err in denying the motion to suppress Jackson's statement.

II.
In his brief to this Court, Jackson raises several additional issues, which include subissues, for review, all of which were argued in the Court of Criminal Appeals and were thoroughly addressed by that court. We have carefully reviewed all the issues raised by Jackson and we will address the following two issues, which were specifically addressed by Jackson's counsel at oral argument before this Court:
1. Whether the trial court erred in granting the State's motion in limine, preventing him, Jackson argues, from presenting motive evidence; and
2. Whether the trial court erred in overriding the unanimous jury recommendation of life imprisonment without the possibility of parole and sentencing Jackson to death.

A.
Jackson contends that the trial court erred in granting the State's motion in limine because, he says, its doing so improperly prevented him from presenting evidence that the motive for the murder was retaliation for a drug deal that had gone "bad," not robbery as the State alleged. He argues that by granting the State's motion, the trial court prevented him from testifying, from cross-examining witnesses, and from presenting mitigation evidence.
A motion in limine is the proper method by which to prohibit the introduction of irrelevant evidence. Wiley v. State, 516 So.2d 812, 814 (Ala.Crim.App. 1986), rev'd on other grounds, 516 So.2d 816 (Ala.1987). The decision to grant or deny such a motion rests within the sound discretion of the trial court and that decision *986 will not be overturned on appeal absent an abuse of discretion. Id. The test for relevancy is whether the evidence "bears any logical relationship to the ultimate inference for which it is offered." Aetna Life Ins. Co. v. Lavoie, 470 So.2d 1060, 1078 (Ala.1984); see also C. Gamble, McElroy's Alabama Evidence § 21.01(1) (5th ed.1996); Garner v. State, 606 So.2d 177 (Ala.Crim.App.1992).
The State filed a pretrial motion in limine requesting that Jackson be prevented from presenting evidence that the victim was involved in drug activity, because, it argued, such evidence was immaterial and irrelevant to the case. In response, Jackson argued that the victim's drug activity went to the reason for the confrontation between Jackson, his codefendants, and the victim and that evidence of that activity was, therefore, relevant. After holding a hearing on the motion, the trial court granted the State's motion. On the day of trial, Jackson's counsel asked the court to reconsider its ruling because Jackson might decide to testify. The trial court indicated that it would reconsider its ruling if Jackson decided to testify.[3] Jackson did not testify, and his counsel did not raise the issue again and did not later ask the court to reconsider its ruling. Because the trial court stated that it would reconsider its ruling, the ruling on the motion in limine was not a final order and the issue was not preserved for appeal. See Perry v. Brakefield, 534 So.2d 602 (Ala.1988); Evans v. Fruehauf Corp., 647 So.2d 718 (Ala.1994). Therefore, we review this issue under the plain-error rule. Rule 45A, Ala.R.App.P.
Nothing in the record supports Jackson's contention that the offense was the result of a drug deal gone "bad." The record indicates that the victim's wife informed the police that her husband was a small-time dealer of crack cocaine. However, neither Jackson nor the codefendants mentioned a drug deal gone "bad" in their statements to law-enforcement officers after the offense. At the hearing, defense counsel stated that he wanted to cross-examine certain witnesses about the victim's being a drug dealer to determine if those witnesses would testify that the victim had been killed as the result of a "bad" drug deal. Defense counsel merely speculated that there was a potential for such testimony; nothing in his proffer indicates that evidence existed to support this theory. While the statement of Gerard Burdette, a passenger in the automobile with the victim at the time of the murder, did refer to "gang" activity, the statement did not indicate that the murder was related to drug activity. Nothing in the record, other than defense counsel's speculation, supports Jackson's theory that the killing was the result of a drug deal gone "bad." Speculation and conjecture do not establish relevant evidence of the existence of a viable defense. Therefore, we hold that the trial court's grant of the State's motion *987 in limine did not constitute error, plain or otherwise.

B.
Jackson contends that the trial court erred in overriding the jury recommendation of life imprisonment without the possibility of parole, which was unanimous, and sentencing him to death.

1.
First, Jackson contends that the trial court erred in considering his juvenile record in overriding the jury's sentencing recommendation.
Section 13A-5-47(b), Ala.Code 1975, requires that the trial court order and receive a written presentence-investigation report before it determines the sentence in a capital case. Section 13A-5-47(b) further provides that the presentence-investigation report and any evidence submitted in connection with it shall be made part of the record in the case.
"Rule 26.3(b), Ala. R.Crim. P., provides for what can be contained in such a presentence report. When a defendant has a significant juvenile record, his or her teenage difficulties will appear as part of the presentence report. However, under the Alabama capital-sentencing scheme, juvenile adjudications are not convictions and cannot be considered as prior criminal activity. Freeman v. State, 555 So.2d 196, 212 (Ala.Crim.App. 1988), aff'd, 555 So.2d 215 (Ala.1989), cert. denied, 496 U.S. 912, 110 S.Ct. 2604, 110 L.Ed.2d 284 (1990). Only convictions can negate the statutory mitigating circumstance of no significant history of prior criminal activity. § 13A-5-51(1), Ala.Code 1975; Freeman v. State, 651 So.2d 576, 597-98 (Ala.Crim. App.1994)."
Ex parte Burgess, 811 So.2d 617, 623 (Ala. 2000).
The record, specifically the sentencing order, reveals that the trial court found one statutory mitigating circumstance that Jackson was 18 years old at the time of the crime. § 13A-5-51(7), Ala.Code 1975. However, Jackson alleges that the trial court used his juvenile record to negate the statutory mitigating circumstance that he had no significant history of prior criminal activity. § 13A-5-51(1). In fact, the trial court specifically stated that Jackson's juvenile record could not be considered in determining whether that statutory mitigating circumstance existed. However, the court noted that Jackson had a significant prior criminal history; he had three felony convictions. Error, if any, by the trial court in considering Jackson's juvenile record was harmless. Ex parte Davis, 718 So.2d 1166, 1178 (Ala. 1998). Therefore, the trial court properly assessed the weight it was to assign that mitigating circumstance in light of Jackson's prior felony convictions.

2.
Jackson contends that the trial court improperly considered his physical characteristics in considering the statutory mitigating circumstance of his age at the time of the offense. See § 13A-5-51(7), Ala. Code 1975. Specifically, he argues that the trial court's reference to his height and weight at the time of the crime was arbitrary and that it deprived him of a reliable sentencing determination.
In Ex parte Clisby, 456 So.2d 105, 108-09 (Ala.1984), cert. denied, 470 U.S. 1009, 105 S.Ct. 1372, 84 L.Ed.2d 391 (1985), this Court stated:
"[T]he sentencing authority in Alabama, the trial judge, has unlimited discretion to consider any perceived mitigating circumstances, and he can assign appropriate weight to particular mitigating circumstances. The United States Constitution does not require that specific *988 weights be assigned to different aggravating and mitigating circumstances. Murry v. State, 455 So.2d 53 (Ala.Crim. App.198[3]), rev'd on other grounds, 455 So.2d 72 (Ala.1984). Therefore, the trial judge is free to consider each case individually and determine whether a particular aggravating circumstance outweighs the mitigating circumstances or vice versa. Moore v. Balkcom, 716 F.2d 1511 (11th Cir.1983). The determination of whether the aggravating circumstances outweigh the mitigating circumstances is not a numerical one, but instead involves the gravity of the aggravation as compared to the mitigation."
The record reflects that in weighing the mitigating circumstance of Jackson's age at the time of the offense, the trial court noted Jackson's height, his weight, and his age at the time of the offense, as well as the fact that Jackson was the father of a 3-month-old child, that he had smoked marijuana since he was 14 years old, that he consumed alcohol on a regular basis, and that he had an extensive criminal record. The court also noted that Jackson was "a physically mature adult" at the time of the offense. A trial judge can consider past behavior and prior criminal activity in evaluating a defendant's maturity and in determining the weight to be given the mitigating circumstance of the defendant's age. Cf. Ex parte Burgess, supra. The decision whether a particular mitigating circumstance is proven and the weight to be given it rests with the judge and the jury. See Carroll v. State, 599 So.2d 1253 (Ala.Crim.App.1992), aff'd, 627 So.2d 874 (Ala.1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994). The trial court did not err in its assessment of the weight to assign the mitigating circumstance of Jackson's age at the time of the offense.

3.
Jackson further contends that the trial court improperly plagiarized the sentencing order from Shellito v. State, 701 So.2d 837, 843-44 (Fla.1997), cert. denied, 523 U.S. 1084, 118 S.Ct. 1537, 140 L.Ed.2d 686 (1998), in its analysis of the mitigating circumstance of Jackson's age. Specifically, Jackson argues that the trial court used the sentencing order from Shellito as a "fill-in-the-blank" form, thereby depriving him of an individualized sentencing determination.
The record shows that in the sentencing order, the trial court stated that Jackson's case was similar to Shellito. Upon review of Shellito and of the trial court's sentencing order, we conclude that the trial court adopted only the analysis used in Shellito. In this case, the trial court's assessment contains a thorough analysis of the facts and the circumstances involved in this case, thereby providing an individualized sentencing determination. We find no error.

4.
Jackson contends that the trial court failed to make an adequate determination of his culpability by failing to determine whether he was the actual shooter in the murder.
In its sentencing order, the trial court stated "there is evidence that [Jackson] was the shooter [and] there is evidence that suggests that [one of Jackson's codefendants], not [Jackson] fired the shot that killed [the victim]." The record supports the court's determination of Jackson's culpability. Therefore, Jackson's argument that the trial court failed to determine his culpability is without merit.

5.
Finally, Jackson contends that the trial court's override of the jury's unanimous recommendation of life imprisonment without *989 parole was improper, arbitrary, and unconstitutional, and that it wrongfully negated the role of the jury. He argues that § 13A-5-47(e), Ala.Code 1975[4]Alabama's judicial override statuteis standardless, unlike override statutes in other states, and that it fails to give lower courts guidance in rejecting a jury's recommendation.
This Court in Ex parte Apicella, 809 So.2d 865 (Ala.2001), upheld the constitutionality of having a judge, not the jury, determine the punishment in a capital case. In Ex parte Taylor, 808 So.2d 1215 (Ala.2001), this Court held that the capital-sentencing procedure set forth in §§ 13A-5-47 and 13A-5-53, Ala.Code 1975, provided sufficient guidance to prevent the arbitrary and capricious imposition of a death sentence.[5] Specifically, the Court noted that the capital-sentencing procedure "ensures that the trial judge is given adequate information and sufficient guidance in deciding whether to accept or to reject a jury's recommended sentence" and that § 13A-5-53, Ala.Code 1975, provided sufficient guidelines for an appellate determination of "whether a trial judge's override of the jury's recommendation is appropriate in a particular case." 808 So.2d at 1219.
We now turn to an analysis of the propriety of the override of the jury's recommendation of life imprisonment without parole in Jackson's case.
Section 13A-5-53, Ala.Code 1975, provides, in pertinent part:
"(b) In determining whether death was the proper sentence in the case the Alabama Court of Criminal Appeals, subject to review by the Alabama Supreme Court, shall determine:
"(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;
"(2) Whether an independent weighing of the aggravating and mitigating circumstances at the appellate level indicates that death was the proper sentence; and
"(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
"(c) The Court of Criminal Appeals shall explicitly address each of the three questions specified in subsection (b) of this section in every case it reviews in *990 which a sentence of death has been imposed.
"(d) After performing the review specified in this section, the Alabama Court of Criminal Appeals, subject to review by the Alabama Supreme Court, shall be authorized to:
"(1) Affirm the sentence of death;
". . . .
"(3) In cases in which the death penalty is deemed inappropriate under subdivision (b)(2) or (b)(3) of this section, set the sentence of death aside and remand to the trial court with directions that the defendant be sentenced to life imprisonment without parole."
Thus, reinstatement of a jury recommendation of life imprisonment without parole is appropriate in those circumstances where the trial court has overridden the jury's recommendation based on bias, passion, or prejudice; where the weighing of aggravating or mitigating circumstances is defective; or where the sentence is disproportionately severe under all of the circumstances. See § 13A-5-53(b), Ala.Code 1975.
In this case, before determining the sentence, the trial court considered all the available evidence; heard arguments on aggravating circumstances and mitigating circumstances; entered written findings of fact summarizing the offense and Jackson's participation in it; made specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13A-5-49, each mitigating circumstance enumerated in § 13A-5-51, and any additional mitigating circumstance offered pursuant to § 13A-5-52; weighed the advisory verdict of the jury; considered and weighed the presentence-investigation report; considered and independently weighed the mitigating circumstances and the aggravating circumstances; and stated specific reasons for giving the jury's recommendation the consideration it gave the recommendation, see Ex parte Taylor. After following this procedure, the trial court concluded that the aggravating circumstances outweighed the mitigating circumstance and imposed the death penalty, overriding the jury's recommendation.
We commend the trial court for its thorough sentencing order and especially for its explanation for its override of the jury recommendation. The trial court found two statutory aggravating circumstances: (1) that the capital offense was committed while Jackson was engaged in a robbery or an attempted robbery, and (2) that the capital offense was committed by a person under sentence of imprisonment. The trial court found one statutory mitigating circumstance: that Jackson was 18 years old at the time of the offense. It is evident from the trial court's sentencing order that it independently weighed the aggravating circumstances and the mitigating circumstance. Additionally, the trial court provided a detailed analysis of its consideration of the jury's recommendation of a sentence of life imprisonment without the possibility of parole and the reasons it rejected that recommendation and sentenced Jackson to death. There is no evidence in the record before us indicating that bias, passion, or prejudice were factors in the trial court's imposing the death sentence.
We have independently weighed the aggravating and mitigating circumstances to determine if death is the appropriate sentence; we conclude, as did the Court of Criminal Appeals, that the aggravating circumstances in this case outweighed the mitigating circumstance. Furthermore, we agree with the Court of Criminal Appeals that in this case the punishment of death is not excessive or disproportionate to the penalty imposed in similar cases. *991 Therefore, we hold that the imposition of the death sentence in this case was proper.
The judgment of the Court of Criminal Appeals is affirmed.
OPINION OF FEBRUARY 15, 2002, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; AFFIRMED.
MOORE, C.J., and HOUSTON, SEE, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., concurs in part, concurs in the result in part, and dissents in part as to the opinion and dissents from the denial of rehearing.
LYONS, J., concurs in part and dissents in part as to the rationale and dissents from the judgment and dissents from the denial of rehearing.
JOHNSTONE, Justice (concurring in part, concurring in the result in part, and dissenting in part as to the opinion and dissenting from the denial of rehearing).
With one exception, I concur in the rationale of the main opinion on the issue of guilt or innocence. The exception is that I do not agree with the trial judge's rationale, recited in the main opinion, for the conclusion that Detective Signore's lie did not render the defendant's statement involuntary and therefore inadmissible. That the statement was not a full confession but was, rather, only an admission of inculpatory relationships is immaterial to the issue whether the statement was voluntary. I agree, however, with the conclusion that the lie in this case did not constitute such a threat or such coercion as would render the statement involuntary and inadmissible.
A caveat is appropriate on an aspect of the opinion of the Court of Criminal Appeals in this case, Jackson v. State, 836 So.2d 915 (Ala.Crim.App.1999). In Part V of that opinion, the Court of Criminal Appeals appears to hold that the facts of this case would not support a jury instruction on the lesser-included offense of robbery. Had the defendant requested such a jury instruction, it would have been due him. The evidence supporting this theory, however, is not so strong that the trial court committed plain error in omitting such an instruction in the absence of a request for one by the defendant.
I respectfully dissent from affirming the Court of Criminal Appeals in its affirmance of the judgment imposing the death penalty pursuant to the trial judge's override of the unanimous recommendation of life imprisonment without the possibility of parole returned by the jury. I agree with Justice Lyons's special writing that the unanimous recommendation of the jury for life imprisonment should be deemed a mitigating circumstance. I further agree with Justice Lyons that the two aggravating circumstances found in this case do not outweigh the combined mitigating circumstances of the life recommendation, the uncertainties in the evidence that the defendant was the triggerman, and the young age of the defendant.
In assigning no weight nor binding effect to a life-imprisonment recommendation by a jury, Alabama law reduces to a sham the role of the jury in sentencing and allows baseless, disparate sentencing of defendants in capital cases. The first of these consequences of Alabama law is a denial of due process of law, and the second is both a denial of due process and a denial of equal protection.
Accordingly, while I agree with the adjudication of the defendant's guilt, I dissent from affirming the affirmance of the death sentence. I would reverse the judgment of the Court of Criminal Appeals affirming the death sentence and would remand the cause for the defendant to be *992 resentenced to life imprisonment without the possibility of parole.
I also dissent from the denial of rehearing in this case.
LYONS, Justice (concurring in part and dissenting in part as to the rationale and dissenting from the judgment and dissenting from the denial of rehearing).
I concur in the main opinion's rejection of Jackson's contentions concerning the denial of his motion to suppress, the denial of his motion in limine, the trial court's consideration of his juvenile record and his physical characteristics, and the alleged plagiarism of a sentencing order from another case. However, because I would reinstate the jury's unanimous recommendation of life imprisonment without parole, I must dissent from the portion of the main opinion that holds otherwise. I also dissent from the denial of rehearing.
The Judicial Article, Amendment No. 328, Alabama Constitution of 1901, confers upon our appellate courts the responsibility for review of all cases, including those in which a sentence of death has been imposed. The Legislature has been more specific. The Court of Criminal Appeals, subject to review by this Court, is authorized by § 13A-5-53, Ala.Code 1975, to review the propriety of a death sentence and, where appropriate, to "set the sentence of death aside and remand to the trial court with directions that the defendant be sentenced to life imprisonment without parole." § 13A-5-53(d)(3). Justice Maddox has previously acknowledged that our appellate courts "are especially sensitive to their roles when there is a jury override." Ex parte Tarver, 553 So.2d 633, 635 (Ala.1989), cert. denied, 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990) (Maddox, J., concurring specially).
Jackson contends that he is denied due process by the mechanism of the judicial override. His contention should fail in view of the authority of the appellate courts of this State to consider independently the jury recommendation against death and to determine whether death is the appropriate penalty in a given case. It is our duty, upon proper application for certiorari review, to reinstate a jury recommendation against the death penalty where the trial court's override is grounded in "passion, prejudice, or any other arbitrary factor"; or where there has been a defective weighing of the aggravating circumstances and the mitigating circumstances; or where the penalty is disproportionately severe under all of the circumstances. § 13A-5-53(b).
The trial court is to be commended for its explanation of the reasons for its override of the jury's advisory verdict. A trial court is required by statute to enter "specific written findings" concerning the existence or nonexistence of the aggravating circumstances and the mitigating circumstances. § 13A-5-47(d). To facilitate the appellate courts of this State in the discharge of their statutory duty to review the propriety of a sentence of death, we should require the trial court to enter specific written findings concerning the propriety of the decision to impose the death penalty over a jury's recommendation of a sentence of life imprisonment without parole. In making such a determination, the trial court should be mindful of the aforementioned criteria applicable to a determination at the appellate level as to the propriety of the sentence of death; namely, whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; whether an independent weighing of the aggravating circumstances and the mitigating circumstances at the appellate level would indicate that death was the proper sentence; and whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering *993 both the crime and the defendant. See § 13A-5-53(b).
The trial court here aptly observed that it did not have any guidance from this Court as to how it should treat the jury's recommendation in the process of weighing the aggravating circumstances and the mitigating circumstances. I believe this Court should offer additional guidance to the trial court as to the effect of a jury's recommendation of a sentence of life imprisonment without parole. The Legislature has provided specific aggravating circumstances at § 13A-5-49, preceded by the phrase, "Aggravating circumstances shall be the following." Such introductory language does not leave room for augmentation of the list through judicial decision-making. In contrast, the legislative catalog of mitigating circumstances is preceded by the phrase, "Mitigating circumstances shall include, but not be limited to, the following." § 13A-5-51 (emphasis added). So as to guide the trial court in determining the effect of a jury's recommendation of life imprisonment without parole, this Court should hold that such a recommendation is to be treated as a mitigating circumstance. The weight to be given that mitigating circumstance should depend upon the strength of the factual basis for the recommendation based upon information known to the jurysuch as conflicting evidence concerning the identity of the "triggerman" or a recommendation made by the victim's family for leniencysubject to the jury's recommendation being undermined based upon information known only to the trial court and not to the jury.
Pursuant to § 13A-5-53(b), Ala.Code 1975, we must weigh the aggravating circumstances and the mitigating circumstances in this case to determine if death is the appropriate sentence. Burdette, a passenger in the victim's vehicle, stated that he saw a long black ".38 or maybe.357" when Jackson and his codefendants began shooting at the victim and Burdette. Both Burdette and the medical examiner expressed the opinion that the person with the .38 pistol or the .357 handgun fired the bullet that killed the victim. That person would have been Barnes, since Barnes and Rudolph both stated that Barnes was the person who was armed with a .357 handgun at the time of the shooting. Based on this evidence, the jury could have believed that Barnes, not Jackson, fired the fatal shot, giving the jury a basis for its recommendation of a sentence of life imprisonment without parole.
The trial court found two statutory aggravating circumstances: (1) that the capital offense was committed while Jackson was engaged in a robbery or an attempted robbery, and (2) that the capital offense was committed by a person under a sentence of imprisonment. The trial court found one statutory mitigating circumstance: that Jackson was 18 years old at the time of the crime. It is evident by the trial court's sentencing order that it weighed the aggravating circumstances and the mitigating circumstance. However, in a close case like this one, where the evidence suggests a possibility that Jackson might not have fired the fatal shot, treating the jury's recommendation of life imprisonment without parole as a mitigating circumstance changes the overall balance of the weighing process.
Independently weighing the aggravating circumstances and the mitigating circumstances and treating the jury's recommendation as a mitigating circumstance, I would conclude that the trial court's override of the jury's recommended sentence and its consequent imposition of the sentence of death were improper under the circumstances of this case. See Ala.Code 1975, § 13A-5-53(a) and (b). Given Jackson's age at the time of the offense and the fact that the evidence pointed to a codefendant *994 as the "triggerman," the jury's unanimous recommendation of a sentence of life imprisonment without parole tips the scales in favor of following the jury's recommendation and in sentencing Jackson to life imprisonment without parole.
In this way, we can abide by the Legislature's command that a jury recommendation is not binding (§ 13A-5-47(e)); at the same time, I do not understand the Legislature to have commanded that the jury recommendation be given no weight whatsoever. We therefore can give the jury's recommendation some weight in the sentencing process as a mitigating circumstance. I do not suggest that a trial court can never override a jury's recommendation of a life-imprisonment sentence, but in order to do so, the aggravating circumstances must be sufficiently egregious to support a sentence of death in light of all mitigating circumstances, including a jury's recommendation of life imprisonment without parole. Therefore, I respectfully dissent from the judgment.
NOTES
[1] Rule 39, Ala.R.App.P., was amended effective May 19, 2000, as to death-penalty cases.

"The amendment removes the provision in the former Rule 39(c) that provided that a petition for a writ of certiorari to the Supreme Court in a case in which the death penalty was imposed would be granted as a matter of right. With this amendment, review of death-penalty cases will be at the discretion of the Supreme Court. The Supreme Court retains the authority to notice any plain error or defect in the proceedings under review in those cases."
"Court Comment to Amendment to Rule 39, effective May 19, 2000, as to death-penalty cases, etc." Ala.R.App.P.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] The following colloquy occurred:

"[Defense counsel]: Judge, we would ask the Court to reconsider the ruling on the motion in limine and at least withhold ruling until maybe the sentencing phase. Our clientwe have not made a decision as to whether we are going to allow our client to testify or not. His testimony, if he does testify, will be diametrically opposed to the factsunderlying facts as the district attorney had presented them, which creates a conflict and a jury question. His testimony deals with a drug deal. I don't want to be put in a situation where we can't ask our client questions about what really happened in this case. We would be limited, to have his testimony limited.
"THE COURT: Well, you know, that's the first I have heard of that, for the record. It's not a criticism. It's just for the record. You know, I willyou know, if and when you decide whether or not your client is going to testify, I will let you ask me to reconsider it at that point."
[4] Section 13A-5-47(e), Ala.Code 1975, provides:

"In deciding upon the sentence, the trial court shall determine whether the aggravating circumstances it finds to exist outweigh the mitigating circumstances it finds to exist, and in doing so the trial court shall consider the recommendation of the jury contained in its advisory verdict, unless such a verdict had been waived pursuant to Section 13A-5-46(a) or 13A-5-46(g). While the jury's recommendation concerning sentence shall be given consideration, it is not binding upon the court."
(Emphasis added.)
[5] We cannot accept Jackson's invitation to engraft the rule propounded in Tedder v. State, 322 So.2d 908, 910 (Fla.1975)(stating that for a trial court to impose a death sentence over a jury's recommendation of life imprisonment without parole, "the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ"). Section 13A-5-47(e) provides an explicit statutory directive that the jury's recommendation as to the sentence is "not binding upon the court." Adopting a rule like the one set forth in Tedder would impermissibly rewrite the statute, in violation of our constitutional duty to observe the separation between the powers conferred upon the judiciary and those conferred upon the Legislature. § 43 Constitution of Alabama of 1901.